# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JAY ASHCROFT, in his official capacity as Secretary of State for the State of Missouri, | ) ) ) ) |
| JOHN THURSTON, in his official capacity as Secretary of State for the State of Arkansas, | ) ) ) ) |
| KIMBERLY BELL, in her official capacity as County Clerk for McDonald County, Missouri, | ) ) ) ) |
| and | ) ) |
| KURT BAHR, in his official capacity as Director of Elections for St. Charles County, Missouri, | ) ) ) ) |
|     Plaintiffs, | ) ) |
| v. | )   No. _____ |
| JOSEPH BIDEN, in his official capacity as President of the United States, | ) ) ) |
| TOM VILSACK, in his official capacity as Secretary of THE DEPARTMENT OF AGRICULTURE, | ) ) ) ) |
| GINA M. RAIMANDO, in her official capacity as Secretary of THE DEPARMENT OF COMMERCE, | ) ) ) ) |
| LLOYD J. AUSTIN, III, in his official capacity as Secretary of THE DEPARTMENT OF DEFENSE, | ) ) ) ) |
| MIGUEL CARDONA, in his official capacity as Secretary of THE DEPARTMENT OF EDUCATION, | ) ) ) ) |
| JENNIFER GRANHOLM, in her official capacity as Secretary of THE | ) ) |

DEPARTMENT OF ENERGY,                           )
                                                )
XAVIER BECERRA, in his official                 )
capacity as Secretary of THE                    )
DEPARTMENT OF HEALTH AND                        )
HUMAN SERVICES,                                 )
                                                )
ALEJANDRO MAYORKAS, in his official )
capacity as Secretary of THE                    )
DEPARTMENT OF HOMELAND                          )
SECURITY,                                       )
                                                )
ADRIANNE TODMAN, in her official                )
capacity as Secretary of THE                    )
DEPARTMENT OF HOUSING AND                       )
URBAN DEVELOPMENT,                              )
                                                )
DEB HAALAND, in her official capacity as )
Secretary of THE DEPARTMENT OF                  )
INTERIOR,                                       )
                                                )
MERRICK GARLAND, in his official                )
capacity as Attorney General of the United      )
States, and head of THE DEPARTMENT              )
OF JUSTICE,                                      )
                                                )
JULIE SU, in her official capacity as           )
Secretary of THE DEPARTMENT OF                  )
LABOR,                                          )
                                                )
ANTONY BLINKEN, in his official                 )
capacity as Secretary of THE                    )
DEPARTMENT OF STATE,                            )
                                                )
PETE BUTTIGIEG, in his official capacity )
as Secretary of THE DEPARTMENT OF               )
TRANSPORTATION,                                 )
                                                )
JANET YELLEN, in her official capacity          )
as Secretary of THE DEPARTMENT OF               )
THE TREASURY,                                    )
                                                )
and                                             )
                                                )
DENIS McDONOUGH, in his official                )
capacity as Secretary of THE                    )

DEPARTMENT OF VETERANS    )
AFFAIRS,    )
    )
    Defendants.    )

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND EXPEDITED CONSIDERATION

---

The Plaintiffs — Secretaries of State for Missouri and Arkansas and local election officials, Kurt Bahr, Director of Elections for St. Charles County, Missouri, and Kimberly Bell, Clerk of McDonald County, Missouri — ask this Court to enter a declaratory judgment and enjoin federal officials and agencies in accordance with this Complaint pursuant to Federal Rules of Civil Procedure 57 and 65.

### THE PARTIES TO THIS LAWSUIT

**A.      The Plaintiffs**

1.      John Robert "Jay" Ashcroft is Missouri's Secretary of State and has been since 2017.  He brings this suit in his official capacity as Missouri's Secretary of State.

2.      Secretary of State Ashcroft is Missouri's chief election official. *See* Mo. Rev. Stat. § 28.035(1).[1]

3.      As Missouri's chief election official, Secretary of State Ashcroft oversees federal and state elections, provides guidance to local election authorities and maintains and secures the Missouri Centralized Voter Registration system. *See* Mo. Rev. Stat. § 28.035.[2]

---

[1] "The secretary of state shall be the chief state election official responsible for the administration and coordination of state responsibilities pursuant to the Help America Vote Act of 2002. . . ."

[2] *See also* https://www.sos.mo.gov/sosbio.

4.     John Thurston is Secretary of State for the State of Arkansas.  Secretary of State Thurston brings this suit in his official capacity as Secretary of State for the State of Arkansas.

5.     The Arkansas Secretary of State's duties include maintaining the state's records for all federal, state, and district elections including working with county clerks and election officials to coordinate voter registration under the Help America Vote Act (HAVA) of 2002 and the National Voter Registration Act (Motor Voter).

6.     Kurt Bahr is the Director of Elections for St. Charles County, Missouri and brings this suit in his official capacity.  Kurt Bahr's duties include the administration of state and federal elections conducted in St. Charles County, Missouri.

7.     Kimberly Bell is the County Clerk for McDonald County, Missouri.  Kimberly Bell brings this action in her official capacity as McDonald County's clerk and election official.

8.     Missouri law provides that the county clerk is the official responsible for administering and conducting elections in the clerk's respective county.  *See* Mo. Rev. Stat. § 115.015.[3]  A county clerk's duties and responsibilities include "conduct[ing] all public elections" within the county, "mak[ing] all rules and regulations . . . necessary for the registration of voters," publishing notices of elections, registering voters, providing and testing voting equipment, appointing and training election judges, and employing staff necessary to assist in those duties. *Id.*; *see also* §§ 115.023, 115.043, 115.051, 115.079.  Where an electronic voting system or voting machines are used, the county clerk shall designate competent employees to have custody of and supervise maintenance of the voting equipment.  *See* Mo. Rev. Stat. § 115.051.  The county clerk is responsible for voter registration, maintaining a current and accurate voter roll, deleting

---

[3] "The county clerk shall be the election authority, except that in a city or county having a board of election commissioners, the board of election commissioners shall be the election authority."

ineligible names from the voter roll, and training subordinate officials, such as election judges, in the conduct of the election, including voter identification and processing requests for absentee ballots and mail-in ballots.  *See* Mo. Rev. Stat. §§ 115.079, 115.081, 115.103, 115.158.

**B.      The Defendants**

9.      President Joseph Biden, is named as a defendant in his official capacity as President of the United States who issued Executive Order 14019 (EO 14019).

10.      Secretary Tom Vilsack, who is named as a defendant in his official capacity, leads the Department of Agriculture, which is an executive agency of the United States government. The Department of Agriculture is an executive branch agency subject to EO 14019 that is the subject of this litigation.

11.      Secretary Gina M. Raimando, who is named as a defendant in her official capacity, leads the Department of Commerce, which is an executive agency of the United States government.  The Department of Commerce is an executive branch agency subject to EO 14019.

12.      Secretary Lloyd J. Austin, III, who is named as a defendant in his official capacity, leads the Department of Defense, which is an executive agency of the United States government. The Department of Defense is an executive branch agency subject to EO 14019.

13.      Secretary Miguel Cardona, who is named as a defendant in his official capacity, leads the Department of Education, which is an executive agency of the United States government. The Department of Education is an executive branch agency subject to EO 14019.

14.      Secretary Jennifer Granholm, who is named as a defendant in her official capacity, leads the Department of Energy, which is an executive agency of the United States government. The Department of Energy is an executive branch agency subject to EO 14019.

15.      Secretary Xavier Becerra, who is named as a defendant in his official capacity, leads the Department of Health and Human Services, which is an executive agency of the United

States government.  The Department of Health and Human Services is an executive branch agency subject to EO 14019.

16.    Secretary Alejandro Mayorkas, who is named as a defendant in his official capacity, leads the Department of Homeland Security, which is an executive agency of the United States government.  The Department of Homeland Security is an executive branch agency subject to EO 14019.

17.    Secretary Adrianne Todman, who is named as a defendant in her official capacity, leads the Department of Housing and Urban Development, which is an executive agency of the United States government.  The Department of Housing and Urban Development is an executive branch agency subject to EO 14019.

18.    Secretary Deb Haaland, who is named as a defendant in her official capacity, leads the Department of the Interior, which is an executive agency of the United States government.  The Department of the Interior is an executive branch agency subject to EO 14019.

19.    Attorney General Merrick Garland, who is named as a defendant in his official capacity, leads the Department of Justice, which is an executive agency of the United States government.  The Department of Justice is an executive branch agency subject to EO 14019.

20.    Secretary Julie Su, who is named as a defendant in her official capacity, leads the Department of Labor, which is an executive agency of the United States government.  The Department of Labor is an executive branch agency subject to EO 14019.

21.    Secretary of State Antony Blinken, who is named as a defendant in his official capacity, leads the Department of State, which is an executive agency of the United States government.  The Department of State is an executive branch agency subject to EO 14019.

22.    Secretary Pete Buttigieg, who is named as a defendant in his official capacity, leads

the Department of Transportation, which is an executive agency of the United States government. The Department of Transportation is an executive branch agency subject to EO 14019.

23.    Secretary Janet Yellen, who is named as a defendant in her official capacity, leads the Department of the Treasury, which is an executive agency of the United States government. The Department of the Treasury is an executive branch agency subject to EO 14019.

24.    Secretary Denis McDonough, who is named as a defendant in his official capacity, leads the Department of Veterans Affairs, which is an executive agency of the United States government. The Department of Veterans Affairs is an executive branch agency subject to EO 14019.

## SUMMARY OF THIS LAWSUIT

25.    On March 7, 2021, President Biden signed Executive Order Number 14019 (EO 14019). A copy of EO 14019 is attached as **Exhibit 1**.

26.    Executive Order 14019 directs federal agencies to engage in activities directly and in concert with "authorized" third-party organizations to engage in a voter registration and mail-in voting scheme. This presidential directive requires federal agencies and employees to use executive agency personnel, resources, and taxpayer funds to promote a voter registration and mail-in ballot campaign by "approved" nonpartisan organizations. Executive Order 14019 directs federal agencies to contribute work by federal employees and use of federal facilities in furtherance of these get-out-the-vote and mail-in ballot efforts.

27.    President Biden's EO 14019 ordered mobilization of federal agencies and federal employees to use federal resources to conduct a "get out the vote" and ballot-harvesting campaign in conjunction with "approved" third-party organizations.

28. Executive Order 14019 was drafted and proposed by left-wing political organizations to enlist the resources of the federal government in a scheme to increase ballots cast for Democrat candidates. See ¶ 57.

29. President Biden's executive order is unconstitutional and contrary to federal law. Executive Order 14019 violates the United States Constitution and federal law in at least four ways: (1) EO 14019 is an executive order of the President without any congressional authorization in violation of the Separation of Powers;[4] (2) EO 14019 imposes burdens and costs upon state and local government to respond to this federally mandated election scheme in violation of constitutional principles of federalism;[5] (3) EO 14019 violates the Elections Clause of the Constitution, Art. I, § 4, cl. 1; and (4) EO 14019 directs federal executive branch employees to violate the Hatch Act, 5 U.S.C. §§ 7321-26, and engage in forbidden partisan political activity.

30. Plaintiffs, in their official capacity as secretaries of state, state attorneys general, and local election officials responsible for their respective State's laws and administration of elections, are (and will be) injured by the implementation of EO 14019 and the substantial costs

---

[4] See, *e.g.*, *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024) ("Importantly, separation of powers 'was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787.'") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021)); *Consumer Fin. Prot. Bureau v. Community Fin. Servs. Ass'n of America, Ltd*., 601 U.S. 416, 437 (2024) ("the Bureau's funding mechanism provides a blueprint for destroying the separation of powers, and [ ] it invites tyranny by allowing the Executive to operate free of any meaningful fiscal check"); *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) ("Separation of powers was designed to implement a fundamental insight: Concentration of power in the hands of a single branch is a threat to liberty. The *Federalist* states the axiom in these explicit terms: 'The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny.'") (Kennedy, J., concurring) (quoting *Federalist No. 47* (C. Rossiter ed. 1961), p. 301).

[5] See *Printz v. United States*, 521 U.S. 898, 925-26 (1997).

and burdens the implementation of EO 14019 imposed upon these state officials and agencies and state resources.

31.    This Court can and should enjoin President Biden and the federal agencies from implementing EO 14019.

## BACKGROUND

32.    Executive Order 14019 requires that "the head of each federal agency shall evaluate ways in which the agency can . . . promote voter registration and voter participation . . . in the course of activities or services that directly engage with the public – including through agency materials, websites, online forms, social media platforms, [information about how to] register to vote, how to request a vote-by-mail ballot, and how to cast a ballot in upcoming elections."  EO 14019.3.

33.    Executive Order 14019 directs federal agencies, officials and employees "to facilitate seamless transition from agencies' websites directly to State online voter registration systems"  and determine "ways to provide access to voter registration services and vote-by-mail activities or services that directly engage with the public."  EO 14019.3(a)(ii), (iii).

34.    Federal agencies are directed to "distribute[] voter registration and vote-by-mail ballot application forms, and provid[e] access to applicable State online systems," "assist[] applicants in completing voter registration and vote-by-mail ballot application forms," "solicit[] and facilitate[e] approved nonpartisan third-party organizations and State officials to provide voter registration services," and "promote and expand access to multilingual voter registration and election information...."  EO 14019.3(a)(iii), (iv).

35.    Executive Order 14019 further mandates consideration of "whether, consistent with any applicable law, any identity documents issued by the agency to members of the public can be issued in a form that satisfies State voter identification laws."  EO 14019.3(a)(v).

36.     Executive Order 14019's requirement that federal agencies issue voter identification documents (quoted above) is especially troubling for several reasons.

37.     One of the agencies subject to EO 14019 is the Department of Homeland Security.

38.     The Department of Homeland Security is processing tens of millions of illegal migrants that are not United States citizens and are not eligible to vote.  And yet, the Department of Homeland Security is issuing these non-citizen migrants documents that allow them to travel throughout the nation including commercial air travel monitored by the Transportation Security Agency.  The documents the Department of Homeland Security issues will be (and are being) used by these non-citizen migrants who are illegally residing in the United States to register to vote and cast mail-in ballots.  See June 14, 2024, report from the Committee on House Administration, attached as **Exhibit 2**.

39.     The United States Constitution in Art. I, §1 and then again in the 17th Amendment specifically gives states authority to regulate and conduct elections — "The electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislatures" — over who is allowed to vote for members of congress and, since voter registration and identification is a lesser included power related to who is allowed to vote, the federal government has no general authority over voter registrations.

40.     But, even if the Elections Clause were controlling, under the Elections Clause it is the responsibility of states to regulate the "time, place, and manner" of elections.  See U.S. CONST. Art. I, § 4 cl. 1.

41.     The States and state officials responsible for the conduct of elections have a compelling constitutional interest in the fair, honest, and orderly conduct of elections.

42.     Pursuant to these constitutional grants of authority, States have established voter eligibility, registration, and identification requirements applicable to those seeking to cast a ballot in state and federal elections.  The various state laws specify the voter identification required by each State. Other than certain designated forms of photo identification (such as passports, military and official employment identification issued to federal employees) the state laws do not designate documents issued by federal agencies such as those contemplated in EO 14019 to be acceptable photo identification necessary to validate a person's eligibility to cast a ballot.

43.     Novel forms of documents issued by federal agencies pursuant to EO 14019 will be confusing to local election officials and make the administration of elections more difficult and less uniform.  For example, what form of identification document issued by the Department of Education or the Environmental Protection Agency or the Department of Energy to persons who are not employees of these agencies will satisfy state voter identification laws?

44.     Among its other provisions, EO 14019 states that President Biden signed this Order for the express purpose of increasing voting *in the African-American community*, stating, "many Americans, *especially people of color*, confront significant obstacles to exercising that fundamental right.  These obstacles include difficulties with voter registration, lack of election information, and barriers to access at polling places.  For generations, *Black voters and other voters of color* have faced discriminatory policies and other obstacles that disproportionally affect their communities."   (emphasis added.)   This is a race-based distinction and preference that the Constitution forbids.  See, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 208 (2023) ("Our acceptance of race-based state action has been rare for a reason.  Distinctions between citizens solely because of their ancestry are by their very nature

odious to a free people whose institutions are founded upon the doctrine of equality.") (internal quotations omitted).

45.     Executive Order 14019 requires federal agencies to develop a strategy and specific plans to accomplish the objectives of EO 14019 between 200 and 270 days after March 7, 2021 (between September 23, 2021, and December 2, 2021).

46.     Executive Order 14019 requires, *inter alia*, federal officials and agencies to use federal taxpayer money and resources to fund what is, in all practical effect, a get-out-the-vote and ballot harvesting scheme favoring a select demographic of the electorate that favors President Biden and the Democrat Party.

47.     The Heritage Foundation has prepared two memoranda describing EO 14019 and has gathered documents federal agencies have prepared in response to EO 14019.  The agencies provided this information in response to Freedom of Information Act requests.  See **Exhibit 3** (copy of Heritage Foundation memoranda with exhibits).

48.     The federal agencies President Biden directed to take action pursuant to EO 14019 have not disclosed what specific actions they will take or have taken to implement EO 14019.  See **Exhibit 3** (copy of Heritage Foundation memoranda with exhibits).  The federal agencies subject to EO 14019 have not engaged in the rule-making and administrative requirements necessary to implement the action President Biden directed the agencies to take in EO 14019.

49.     Recently, on June 13, 2024, the House Committee on Administration (the committee with jurisdiction of federal elections) subpoenaed fifteen Biden Administration cabinet officials requiring them to provide documents related to EO 14019.  See **Exhibit 4** .[6]

---

[6] The House subpoenas were directed to the Secretaries of the Departments of Transportation, Agriculture, Interior, Treasury, State, Homeland Security, Health and Human Resources, Energy,

50.     The House Oversight and Accountability Committee is pursuing a separate investigation of EO 14019.  See **Exhibit 5** (copy of March 29, 2022, letter from Chairman of the House Committee and May 13, 2024, letter from members of the House Oversight Committee).

51.     Alabama, Arkansas, Florida, Georgia, Idaho, Indiana, Mississippi, Montana, Nebraska, Ohio, South Dakota, Wyoming, Tennessee, and West Virginia Secretaries of State wrote President Biden requesting that he rescind EO 14019 because, "[i]nvolving Federal agencies in the [voter] registration process will produce duplicate registrations, confuse citizens and complicate the jobs of county clerks and election officials.  If implemented, the Executive Order would also erode the responsibility and duties of the state legislatures to their situational duty within the Election Clause."  **Exhibit 6**  (August 3, 2022, letter of Secretaries of State).

52.     Texas Attorney General Paxton protested the Executive Order because the order, "allows [President Biden's] hand-picked political appointees to direct federal agencies in using taxpayer funds to register voters, distribute vote-by-mail ballots, help voters they've chosen to participate in the electoral process and engage in countless other quasi-election concerning activities at their political appointees' discretion."  **Exhibit 7** (October 10, 2022, statement of Texas Attorney General Paxton.).

53.     Twenty-six Pennsylvania state representatives and one state senator brought a challenge to EO 14019 in the United States District Court for the Middle District of Pennsylvania, *Keefer v. Biden*, No. 1:25-00147.  See **Exhibit 8(a)** (amici curiae brief of members of United States Congress) and **Exhibit 8(b)** (amicus brief of Secretaries of State of West Virginia, Arkansas, Indiana, Louisiana, Mississippi, Montana, New Hampshire, and Wyoming).  The Biden

---

Education, Defense, Commerce, Justice, Labor, Housing and Urban Development, and the Office of Management and Budget.

Administration responded by challenging the Pennsylvania legislators standing to bring a challenge to EO 14019.  That challenge is currently pending before the Third Circuit (Case No. 24-1716).

54.     President Biden unlawfully seeks to use federal government resources to aid Democrat campaigns by enlisting the immense federal bureaucracy in a get-out-the-vote and ballot harvesting campaign.

55.     Executive Order 14019 requires all federal agencies to identify and partner with specified partisan third-party organizations chosen by the Biden administration whose names and roles are not transparent but are willfully withheld from the public.

56.     Executive Order 14019 directs taxpayer resources to be used to support the efforts of the third-party organizations to do voter registration drives and mail-in voting.

57.     Executive Order 14019, which was largely drafted by a third-party, nongovernmental activist organization, requires public officials to solicit and enter into partnership agreements with third-party nongovernmental organizations to conduct voter registration drives and get-out-the-vote activities.  See **Exhibit 9** (available at: https://www.demos.org/policy-briefs/executive-action-advance-democracy-what-biden-harris-administration-and-agencies-can) (last visited June 30, 2024).

58.     Executive Order 14019 is similar in several respects to the Biden Administration's order cancelling $430 billion in student loan  debt that was declared unconstitutional in *Biden v. Nebraska*, 600 U.S. __, 143 S.Ct. 2355 (2023).

59.     Six states (including Missouri)  challenged Biden's student loan cancellation scheme because the scheme lacked congressional authorization and violated the separation of powers.  The states moved for a preliminary injunction to enjoin implementation of Biden's debt

cancellation scheme.   The Biden Administration responded by challenging the states' standing to bring the challenge.   The Supreme Court held the state of Missouri had standing to challenge the Department of Education's across-the-board student loan cancellation plan.   The Supreme Court held Biden's student loan debt cancellation scheme was unconstitutional because, *inter alia*, Congress did not authorize the Secretary of Education to cancel student loan debt by presidential (or agency) fiat, and the cancellation of the debt lacked "clear congressional authorization." *Biden v. Nebraska*, 143 S.Ct. at 2375.

## THIS COURT HAS JURISDICTION AND VENUE IS PROPER

60.    Plaintiffs seek prospective declaratory and injunctive relief to prevent the burdens and injury that the implementation of EO 14019 will impose upon them.

61.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1346 and 1361.  This action arises under the Constitution and laws of the United States.  This Court has jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

62.    Venue lies in this district pursuant to 28 U.S.C. § 1391(e).  The lead Plaintiffs Secretary of State Ashcroft and Election Director Kurt Bahr are in the United States District for the Eastern District of Missouri.

## THE PLAINTIFFS HAVE STANDING
## TO CHALLENGE EXECUTIVE ORDER 14019

63.    The States, state attorneys general, secretaries of state, and state election officials have standing to challenge this President Biden's executive order directing federal agencies to engage in a get-out-the-vote and ballot harvesting campaign.

64.    Article III of the United States Constitution limits judicial power to "cases and controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006); see also, U.S. CONST. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the plaintiff

must have a "personal stake in the case — in other words, standing." *TransUnion LLC v. Ramirez*,

594 U.S. 413, 423 (2021) (internal quotation marks omitted). In order to establish standing, "a

plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual

or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would

likely be redressed by judicial relief." *Id.* at 423. In other words, "[i]f the plaintiff does not claim

to have suffered an injury that the defendant caused and the court can remedy, there is no case or

controversy for the federal court to resolve." *Id.*

65.     As the Supreme Court noted in *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647,

665 (2021):

> All that is needed to entertain an appeal of that issue is one party with standing, see *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 591 U.S. __, __, n. 6, 140 S.Ct. 2367, 2379, n. 6, (2020), and we are satisfied that Attorney General Brnovich fits the bill. The State of Arizona intervened below; there is "[n]o doubt" as an Article III matter that "the State itself c[an] press this appeal," *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. __, __, 139 S.Ct. 1945, 1951, (2019); and the attorney general is authorized to represent the State in any action in federal court, Ariz. Rev. Stat. Ann. § 41–193(A)(3) (2021); see *Arizonans for Official English v. Arizona*, 520 U.S. 43, 51, n. 4, (1997).

66.     Because the Plaintiffs in their official capacity as election officials have suffered

(and will suffer) a "concrete particularized, and actual or imminent" injury that is cause by (or will

be caused by) the defendant agencies implementing EO 14019, these Plaintiffs have standing to

seek a declaratory judgment and related injunctive relief.

67.     The Supreme Court's recent decisions on standing hold that a plaintiff satisfies the

"case and controversy" requirement of Article III necessary to establish standing if the party has a

"personal stake" in the case, "[t]hat is, the plaintiff must have suffered an injury in fact — a

concrete and imminent harm to a legally protected interest, like property or money — that is fairly

traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden v. Nebraska*,

143 S.Ct. 2355, 2365 (2023) (quoting *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021),

and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). See also *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 379 (2024) ("For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute. The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'") (internal citations omitted) (quoting, *inter alia*, *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 487 (1982)).

68.    The Plaintiffs easily satisfy these criteria necessary to establish the standing to challenge the legitimacy of President Biden's EO 14019. The Plaintiffs have all demonstrated "injury in fact" and have – and will continue – to incur this injury and the costs due to the implementation of EO 14019 unless this Court enjoins the implementation of EO 14019.

69.    Furthermore, the Plaintiffs have a compelling constitutional interest in assuring that elections are conducted in a fair, honest, and orderly manner that inspires public confidence in the integrity of the outcome. See *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 196 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters. Moreover, the interest in orderly administration and accurate recordkeeping provides a sufficient justification for carefully identifying all voters participating in the election process.").

70.    The States and its election officials have an interest in protecting public confidence "in the integrity and legitimacy of representative government." While that interest is closely related to the State's interest in preventing voter fraud, public confidence in the integrity of the electoral

process has independent significance, because it encourages citizen participation in the democratic process. As the Carter–Baker Report observed, the " 'electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters.' " *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196-197 (2008).   See also *Building Confidence in U.S. Elections* (Carter-Baker Report) § 2.5 (Sept. 2005) (quoted by the Court in *Crawford*, 553 U.S. at 193-94).

71.    The Supreme Court in *Crawford* held, "[o]ne strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry appropriate weight. Fraud can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome.   Ensuring that every vote is cast freely, without intimidation or undue influence, is also a valid and important state interest. This interest helped to spur the adoption of what soon became standard practice in this country and in other democratic nations the world round: the use of private voting booths." (Citing *Burson v. Freeman*, 504 U.S. 191, 202–205 (1992) (plurality opinion)).

72.    "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (*per curiam*) (internal quotation marks omitted). Limiting the classes of persons who may handle early ballots to those less likely to have ulterior motives deters potential fraud and improves voter confidence. That was the view of the bipartisan Commission on Federal Election Reform chaired by former President Jimmy Carter and former Secretary of State James Baker. The Carter-Baker Commission noted that "[a]bsentee balloting is vulnerable to abuse in several ways: . . . Citizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, overt and subtle, or to

intimidation." *Report of the Comm'n on Fed. Election Reform, Building Confidence in U.S. Elections* 46 (Sept. 2005) (The Carter Baker Commission).

73.    The Carter Baker Commission warned that "[v]ote buying schemes are far more difficult to detect when citizens vote by mail," and it recommended that "States therefore should reduce the risks of fraud and abuse in absentee voting by prohibiting 'third-party' organizations, candidates, and political party activists from handling absentee ballots." *Ibid.* The Commission ultimately recommended that States limit the classes of persons who may handle absentee ballots to "the voter, an acknowledged family member, the U.S. Postal Service or other legitimate shipper, or election officials." *Id.* at 47.

74.    The Plaintiffs' interest in the need to maintain a current accurate voter roll that includes only the names of citizens eligible to cast a ballot and to assure that the ballots actually cast and counted are those cast by citizens eligible to cast a ballot is a compelling interest.  The implementation of EO 14019 will undermine this interest and the Plaintiffs' ability to fulfill their responsibility to oversee fair, just, and honest elections.

75.    All Plaintiffs have suffered "an injury in fact" because EO 14019 requires that state personnel and local election officials to spend state funds and resources in response to the EO 14019 get-out-the-vote mail-in voting scheme.  See the letter from the Secretaries of State and statement of Texas Attorney General Paxton, incorporated by reference, for a description of the ways EO 14019 imposes unreimbursed costs and expenses upon States and local election officials. **Exhibits 6** and **7**.

76.    Secretary of State Ashcroft, as Missouri's Secretary of State, has to reimburse local election officials when they enter, or record voter registrations or changes to existing voter registrations submitted by the defendant agencies or third-party organizations pursuant to EO

14019. The processing of these voter registration forms or mail-in ballot applications, many of which are duplicates, ineligible, or in the name of illegal migrants imposes a significant expense and burden upon state and local election officials that must review and vet the eligibility of these documents.

77.     Secretary of State Ashcroft faces particular challenges, because involving Federal agencies in the voter registration process will produce duplicate registrations, confuse citizens and complicate the duties of county clerks and election officials.

78.     Secretary of State Ashcroft maintains the state-wide voter roll. Missouri local election officials and county clerks, including Kimberly Bell and Election Director Kurt Bahr, have to review and process each new registration obtained by the defendant agencies pursuant to EO 14019. The review and vetting of these voter registration applications and requests for mail-in ballots imposes a significant administrative burden and cost upon county clerks and election officials.

79.     Executive Order 14019's imposition of this burden and cost upon state and local officials is unconstitutional.  *Printz*, 521 U.S. 898 (obligation to conduct background checks on prospective handgun purchasers imposed unconstitutional obligation on state officers to execute federal laws).

80.     County Clerk Bell's experience demonstrates the problems local election officials face. **Exhibit 10** (Bell Declaration). One individual, an immigrant who had not yet been naturalized, came to Plaintiff Bell to be *removed* from the McDonald County voter roll. *Id*. He was concerned that being on a voter roll would be viewed as illegal and would keep him from obtaining citizenship. *Id.* This individual's voter registration form was not filled out by him, but by someone

at a social services office. *Id*. Plaintiff Bell was able to remove this individual from the voter roll until he became a citizen a few months later. *Id*.

81.     This is just one example of the problems associated with having federal agencies and partisan third-party organizations encourage and obtain voter registration and mail-in ballot requests. The burden of processing, like that described here or because of duplicate registrations or registrations that contain clear errors, falls on local officials to correct. But EO 14019 makes no appropriations for the cost of these services.

82.     State and local election officials will be additionally burdened by the need to review the identification documents the agencies issue pursuant to EO 14019.3(a)(v). These documents are not designated as acceptable identification documents under state law.  Federal agencies issuing documents that purport to satisfy state voter identification requirements will require training and other burdensome activities by state and local election officials solely as a result of EO 14019.

## COUNT I

### EXECUTIVE ORDER 14019 VIOLATES
### STATE SOVEREIGNTY AND FEDERALISM

83.     The U.S. Constitution established a Republic in which the States and Federal Government have dual sovereignty.  The Federal Government is a government of limited and enumerated powers with the power not expressly granted the Federal Government retained by the States.  See Amendment X, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

84.     Among the powers, responsibilities, and authority retained by the States is the conduct of elections subject to Congress's limited authority to regulate elections as provided in the Elections Clause.  See Count III, infra.

85.     The Tenth Amendment makes clear that all power over elections is presumptively held by the State legislature and is, if not delegated to Congress, reserved to the State legislature. See U.S. CONST. Amend. X.  "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." *Id*.  The states have thus always been, and remain, "sovereigns" over elections, and have delegated to Congress only a limited, "enumerated" power to regulate elections through legislation. *New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471-72 (2018).

86.     Congress is barred from delegating its legislative Powers to the Executive branch. "All legislative Powers … [are] vested in [the] Congress of the United States," and "Congress… may not transfer to another branch 'powers which are strictly and exclusively legislative.'"  U.S. CONST. Art. I §1; *Gundy v. United States*, 139 S.Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825)).  The power to override traditional State sovereignty over elections is, thus, strictly and exclusively vested in "the Congress" as a lawmaking power and in no other branch of the federal government.  See U.S. CONST. Art. I, §4, cl. 1.  See also, *Loper Bright Enterprises v. Raimondo*, 602 U.S. __ (2024).

87.     This means that under the U.S. Constitution, state legislatures, not the President, regulate the conduct of elections, and only Congressional legislation, not presidential executive orders, may override that authority.

88.     The EO 14019 scheme by which President Biden directs federal agencies to implement a get-out-the-vote and ballot harvesting campaign that enrolls state and local election officials violates the "system of 'dual sovereignty'" the Constitution established. *See Printz*, 521 U.S. at 918 (citing and quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) and *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).

89.     Under the Constitution, the states are sovereign and, while the federal government is also sovereign when acting within its constitutional authority, the federal government cannot impose a duty or obligation upon a state without the state's agreement.

90.     The federal government may not compel states and state officials to work for the federal government or pay the cost of implementing an executive order.

91.     Executive Order 14019 is not an arrangement the State of Missouri or its state and local election officials have agreed to and EO 14019 does not provide funds to the states and state election officials to reimburse the state officials for the expense EO 14019 requires these state and local election officials to incur.

92.     The legal principles governing resolution of this issue are set forth by the *Anderson-Burdick* analysis, based on the Supreme Court's decisions in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). The Court recognized that there must be "a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson*, 460 U.S. at 788 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). The Court explained further:

> To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. Nevertheless, the States' important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.
>
> *Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 605 (4th Cir. 2016).

93.     In pursuit of the states' responsibility to assure that elections are fair and honest, states have adopted election laws including voter registration and voter identification requirements.  Each state that has adopted voter identification laws has a specified list of

documents that satisfy the identification requirements. These laws list the acceptable identification an individual must present to cast a ballot.

94.     Executive Order 14019 purports to supplant or circumvent or, at a minimum, confound and confuse states' voter identification statutes and requirements by adding a category of identification documents that may not satisfy state law voter identification requirements and would not be familiar to the state and state election officials. Various federal agencies issuing documents that purport to comply with state voter identification requirements (which documents are unfamiliar to state election officials) will create confusion in a state's ability to uniformly and equally administer the state's voter identification laws.

## COUNT II

## EXECUTIVE ORDER 14019 VIOLATES THE SEPARATION OF POWERS

95.     The U.S. Constitution is designed to separate the Powers the people granted the federal government between the Legislative, Executive, and Judicial branches.  As each branch's name suggests, they have specific authority to act in a sphere of civil government.  The Legislative Branch – Congress, composed of the House and Senate – enacts laws and appropriates funds.  The Executive Branch executes the laws and oversees the spending of those funds Congress appropriates.  The Executive Branch (that is to say, the President) has no authority to act or to spend funds beyond that authority granted the President as Chief Executive and as delegated by Congress.  See *Loper Bright Enterprises v. Raimondo*, 2024 WL 3208360, at 22 (S.Ct. June 28, 2024) ("when a particular statute delegates authority to an agency *consistent with constitutional limits*, courts must respect the delegation, *while ensuring that the agency acts within it*") (emphasis added).

96.     The Executive Branch agencies – which are the defendants in this action – have no authority to act beyond that authority Congress has constitutionally delegated to the respective agency.  See *id.*

97.     Executive Order 14019 is not authorized by Congress.  There is no statute by which Congress authorized federal agencies to take that action President Biden directs in EO 14019.  Executive Order 14019 stands in marked contrast to legislation Congress has adopted concerning the conduct of federal elections.  For example, consider the Voting Rights Act of 1965, the National Voter Registration Act of 1993, and the Help America Vote Act of 2002.  These statutes illustrate the fundamental point that, when the federal government takes action concerning the conduct of elections, the President must only act pursuant to congressional authorization.

98.     The President is the Chief Executive charged with faithfully executing the laws, but Congress, as the Legislative Branch, writes the laws.  The Constitution does not permit the President as chief executive to act beyond the authority the President is granted in the Constitution.

99.     There is no congressional authorization directing or permitting executive agencies to direct federal agencies to take that action President Biden directs in EO 14019.  Congress has not conferred upon the president the authority to take this action.

100.    Thus, EO 14019 standing alone as a presidential edict without any authorization from Congress violates the Separation of Powers.  See *Biden v. Nebraska*, 143 S.Ct. at 2373.  Executive Order 14019 is "about one branch of government arrogating to itself power belonging to another."  *Id.*

101.    Indeed, as explained *infra*, EO 14019 is not just action by President Biden without congressional authorization, it is an order by President Biden that is *contrary* to law because EO

14019 directs federal officials and employees to take action forbidden by the Hatch Act.  See Count IV infra.

102.    For these reasons, EO 14019 must be struck down and the implementation of EO 14019 by these executive agencies enjoined.

## COUNT III

### EXECUTIVE ORDER 14019 VIOLATES THE ELECTIONS CLAUSE

103.    The Elections Clause of the Constitution provides, in relevant part, that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  Art. I, § 4, cl. 1.  The Electors Clause similarly provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors," who in turn elect the President.  Art. II, § 1, cl. 2.

104.    As such, the Elections Clause directs the states to determine the "times, place and manner" of elections including representatives to the House and senators and presidential electors.

105.    *Congress,* not the President, has the authority to "make or alter" rules concerning federal elections, such as establishing the national Election Day on the first Tuesday after the first Monday in November.  But, the State is the primary authority regulating and conducting elections for federal office.  Of course, each State's laws and procedures for the conduct of federal elections must be consistent with the other provisions of the Constitution and Bill of Rights.  See 2 U.S. §7, "The Tuesday after the first Monday in November in every even numbered year, is established as the day for the election in each of the States and Territories of the United States."

106.    In the first instance the primary responsibility for conducting elections and establishing the rules governing the participation in, and administration of, elections is vested with the States.

107.    The Elections Clause provides that, "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the *Congress* may at any time *by Law* make or alter such Regulations, except as to the Places of choosing Senators."  U.S. CONST. Art. I, § 4, cl. 1 (emphasis added.)

108.    EO 14019 violates the Elections Clause by interfering with the rights and responsibilities of the States.

## COUNT IV

## EXECUTIVE ORDER 14019 DIRECTS FEDERAL AGENCIES AND EMPLOYEES TO VIOLATE THE HATCH ACT

109.    Congress adopted the Hatch Act, 5 U.S.C. §§ 7321-26, in 1938.  Under the Hatch Act, federal employees with limited exceptions, *may not* "use [their] official authority or influence for the purpose of interfering with or affecting the result of an election; [ ] knowingly solicit, accept, or receive a political contribution from any person...or [ ] knowingly *solicit or discourage the participation* in any political activity of any person who" has applied for employment with or has a matter involving a contract, license, or permit pending before the federal agency or is being audited or investigated by that agency or subject to the agency's enforcement action.  *Id.* § 7323(a) (emphasis added).

110.    The Office of Special Counsel issued an advisory opinion stating:

The Hatch Act, 5 U.S.C. §§ 7321-7326, governs the political activity of federal executive branch employees, including XXX employees. The Act permits most covered employees to actively participate in partisan political management and partisan political campaigns. Covered employees, however, are prohibited from, among other things, engaging in political activity while on duty, in any room or building occupied in the discharge of official duties by an individual employed or holding office in the Government of the United States or any agency or instrumentality thereof, while wearing a uniform or official insignia identifying the office or position of the employee, or using any vehicle owned or leased by the Government of the United States or any agency or instrumentality thereof. 5 U.S.C. § 7324. Political activity has been defined as activity directed toward the success or

failure of a political party, candidate for a partisan political office or partisan political group. 5 C.F.R. § 734.101.

*Therefore, the Hatch Act would prohibit a XXX employee, while on duty or in his or her workplace, from participating in a partisan voter registration drive, e.g., a drive aimed at helping a political party or candidate succeed.*

**Exhibit 11** (emphasis added).

111.    Contrary to the Hatch Act, President Biden's EO 14019 directs federal government employees and officials to "directly engage with the public" and "identify documents issued by the agency to members of the public" that "facilitate" a get-out-the-vote and ballot harvesting campaign to register individuals to vote.

112.    Executive Order 14019 directs federal agencies and employees to develop "a strategic plan outlining the ways … the agency can promote voter registration and voter participation."

113.    Even more, EO 14019 directs executive agencies and federal employees to "solicit[] and facilitate[] approved nonpartisan third-party organizations and State officials to provide voter registration services on agency premises." For example, EO 14019 directs federal agencies to affirmatively solicit organizations such as Rock the Vote or Black Lives Matter to establish a voter registration campaign in the lobby of federal offices such as that of the Department of Health and Human Services.

114.    These "third-party organizations" would be engaged in get-out-the-vote registration campaigns on federal property and in federal offices. These voter registration activities and mail-in ballot campaigns would be conducting under the imprimatur of the federal government, and federal employees and officials are directed to "solicit and facilitate" this activity.

115.    Executive Order 14019 seeks to enlist the federal bureaucracy into a workforce and use taxpayer resources to conduct a national get-out-the-vote campaign directed to enrolling

constituencies of individuals that predominantly support Democratic candidates. This is a clear violation of the intent, purpose, and express provisions of the Hatch Act.

116.    Executive Order 14019 presents a further constitutional violation when it limits the "nonpartisan third-party organizations" that federal agencies are directed to solicit and encourage in voter-registration efforts to "approved" third-party organizations.  Who "approves" the third-party organizations?  What criteria must a third-party organization submit to be "approved" to receive the federal agency support for a voter registration or mail-in ballot effort?  Who determines if a "third-party" organization is "nonpartisan?"

**INJUNCTIVE RELIEF IS NECESSARY AND PROPER**

117.    Plaintiffs have demonstrated that EO 14019 will cause concrete, imminent injury in the form of compliance costs and other burdens imposed upon these state and local election officials who are Plaintiffs in this case. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements."); *see also Murthy v. Missouri*, 603 U.S __ (2024); *Printz v. United States*, 521 U.S. 898, 825-26 (1997).

118.    Missouri Secretary of State Jay Ashcroft, Arkansas Secretary of State John Thurston, and County Clerk Kimberly Bell and Election Director Kurt Bahr have suffered, and continue to suffer, an injury-in-fact because, *inter alia*, these state and local election officials will be forced to bear the expenses caused by EO 14019 and to pay for these costs from state and local revenue. Further, the implementation of EO 14019 will make the training of local election officials such as poll workers and election judges more difficult and costly.

119.    The aforementioned letter from the Secretaries of State (**Exhibit 6**) and statement of Texas Attorney General Paxton (**Exhibit 7**), incorporated by reference, further describe the ways EO 14019 imposes unreimbursed costs and expenses upon States.

120.    Totally apart from and in addition to the uncompensated costs EO 14019 imposes upon state and local government officials, Executive Order 14019 purports to mandate action that violates the State's compelling interest in assuring that elections are conducted in an orderly, fair, and honest manner.

121.    This injury can only be redressed by this Court granting the injunctive relief sought by Plaintiffs. Enjoining enforcement of EO 14019 will prevent the Plaintiffs from incurring compliance costs.

**A.    There is a substantial likelihood the Plaintiffs will succeed on the merits.**

122.    When considering Plaintiffs' likelihood of success on the merits, courts look to "standards provided by the substantive law." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016), *as revised* (June 27, 2016).

123.    The Supreme Court recently held that agencies are no longer entitled to deference pursuant to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 839 (1984), because Chevron "allow[ed] agencies to change course even when Congress [had] given them no authority to do so." *Loper Bright Enters. v. Raimondo*, No. 22-1219, __ U.S. __, 2024 WL 3208360, at 21. Thus, *Chevron* "foster[ed] unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Id.* at __, __ S.Ct. __, 2024 WL 3208360 at 21 (internal citations and quotation marks omitted). Now, courts

> [m]ust exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Id.* at __, __ S.Ct. __, 2024 WL 3208360 at 22.

124.    The Supreme Court further held that "statutes, no matter how impenetrable, do —
in fact, must — have a single, best meaning. That is the whole point of having written statutes;
'every statute's meaning is fixed at the time of enactment.' " *Id.* at __–, __ S.Ct. __, 2024 WL
3208360 at 16 (quoting *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)). For this
reason, courts must interpret words included in a statute "consistent with their ordinary meaning
... at the time Congress enacted the statute." *Wisc. Cent. Ltd.*, 585 U.S. at 284. Meanwhile, a
statute's scope is determined by examining its "text in light of context, structure, and related
statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 547 (2005).

**B.      There is a substantial threat of irreparable harm.**

125.    "An irreparable harm is one for which there is no adequate remedy at law." *Book
People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024). "If a plaintiff is an object of a regulation
'there is ordinarily little question that the action or inaction has caused him injury, and that a
judgment preventing or requiring the action will redress it.' " *Contender Farms, L.L.P. v. U.S.
Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S.
555, 561 (1992)). The Fifth Circuit has recognized that "complying with a regulation later held
invalid almost always produces the irreparable harm of nonrecoverable compliance costs.... Such
harm, however, must be more than "speculative." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th
Cir. 2022). These compliance costs do not have to be quantified but must only be more than de
minimis. *Id.* at 1035.

126.    Plaintiffs will suffer irreparable harm in the form of nonrecoverable compliance
costs without the Court's immediate intervention and a loss of integrity in the voter rolls and
compromised integrity of the election administration. *See* Plaintiffs' Declaration, **Exhibit 10**.

**C.    The balance of equities and consideration of the public interest favor an injunction to preserve the status quo.**

127.    The last two requirements that Plaintiffs must establish are "(3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey*, 647 F.3d at 595. "The balance-of-harms and public-interest factors merge when the government opposes an injunction." *Career Colleges & Schs. of Tex.*, 98 F.4th at 254.

128.    A stay of the effective date of the May 2024 Rule will not harm any of the public interest because it will merely preserve the status quo. *See Louisiana v. Biden*, 55 F.4th at 1035. Meanwhile, Plaintiffs have shown that they would either incur substantial costs in order to implement the executive order's requirements and that the integrity of the conduct of the 2024 General Election will be compromised. As a result, Plaintiffs have established all four elements for imposing a preliminary injunction and stay.

129.    Missouri Secretary of State Jay Ashcroft, Arkansas Secretary of State John Thurston, McDonald County Clerk Kimberly Bell and St. Charles County Election Director Kurt Bahr have suffered, and continue to suffer, an injury-in-fact because, *inter alia*, these state and local election officials will be forced to bear the expenses caused by EO 14019 and to pay for these costs from state and local revenue. Further, the implementation of EO 14019 will make the training of local election officials such as poll workers and election judges more difficult and costly.

130.    This injury is directly traceable to EO 14019 because of its direct impact on Missouri elections.

131.    Executive Order 14019 gives agencies the ability to select third-party organizations, using unappropriated taxpayer funding, to register voters, distribute vote-by-mail ballots, and engage in get-out-the-vote activities.

132.    The scope of agencies' action implementing EO 14019 is unknown, but it is clear that the agencies are taking some action in response to EO 14019.  The U.S. Department of Housing and Urban Development instructed more than 3,000 public housing authorities, which manage approximately 1.2 million public housing units across the country, to run voter registration drives in those units. *See* Fred Lucas, HUD Pushes Voter Registration Drives in Public Housing Under Biden's Executive Order, The Daily Signal (2022), https://www.dailysignal.com /2022/04/27/hud-pushes-voter-registration-drives-in-public-housing-under-bidens-executive-order/ (last visited: June 30, 2024). Federal housing officials also advised the local agencies on how to apply to become a "voter registration agency under the National Voter Registration Act," and how to set up drop boxes for ballots on the premises. *Id*

133.    The injury can only be redressed by this Court enjoining EO 14019 because there is still time for the illegal scheme described in EO 14019 to be stopped before the November General Election, even if some damage has been done.

134.    The preliminary injunction should be national in scope and not limited to only the Plaintiff States.  This is because:

(a)    Executive Order 14019 is national in scope and the implementation of EO 14019 is not limited to only the federal agency action in the Plaintiff States;

(b)    The administration and conduct of the 2024 General Election is essentially underway currently with all States and Territories taking action to prepare for the conduct of the election including voter registration and mail-in ballots;

(c)    The Equal Protection Clause requires the election be conducted in a uniform and equal manner.  See *Bush v. Gore*, 531 U.S. 98 (2000).  To allow these federal agencies to conduct the get-out-the-vote and ballot harvesting activities directed by

EO 14019 in some states but enjoin that activity in the Plaintiff states would result in the General Election being conducted in a disparate manner; and

(d)     Executive Order 14091 is equally unlawful and unconstitutional whether the activities EO 14019 directs are conducted in one state or in all fifty states.  Thus, the preliminary injunction must be issued against the defendant applicable to the entire nation.

## PRAYER FOR RELIEF

The Plaintiffs respectfully ask this Court to:

a.     Declare that EO 14019 violates the Constitution and federal law;

b.     Immediately enjoin the Defendants from taking any action to implement EO 14019 or spending any funds or making federal employees or facilities available to implement EO 14019; and

c.     Grant such other and further relief as the Court shall deem necessary and just.

Respectfully submitted,

Attorney for Plaintiffs
*/s/ Mark F. (Thor) Hearne, II*
MARK F. (THOR) HEARNE, II
TRUE NORTH LAW, LLC
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 296-4000
Thor@truenorthlawgroup.com


*/s/ Jay Ashcroft*
Secretary of State Jay Ashcroft
(pro hac vice application pending)


*/s/ Frank Jung*
Frank Jung, General Counsel
(pro hac vice application pending)
600 W. Main
Jefferson City, MO 65101