IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

JAY ASHCROFT, et al.,                 )
                                      )
        Plaintiffs,                   )
                                      )
vs.                                   )        Case No. 4:24-CV-01062 SEP
                                      )
JOSEPH BIDEN, et al.,                 )
                                      )
        Defendants.                   )

THE STATE OF MISSOURI,                )
ex rel. ANDREW BAILEY, in his         )
official capacity as                  )
Missouri Attorney General             )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )        Case No. 4:24-CV-01063
                                      )
JOSEPH BIDEN, et al.,                 )
                                      )
        Defendants.                   )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR AN EXPEDITED PRELIMINARY INJUNCTION**

MARK F. (THOR) HEARNE, II
*True North Law, LLC*
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 296-4000
thor@truenorthlawgroup.com

Attorney of Record for Jay Ashcroft,
John Thurston, Kimberly Bell, and Kurt Bahr

Secretary of State Jay Ashcroft
(pro hac vice application pending)

Frank Jung, General Counsel
(pro hac vice application pending)
600 W. Main
Jefferson City, MO 65101

ANDREW BAILEY
JAMES S. ADKINS
*Office of the Attorney General of Missouri -
Jefferson City*
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102-0899
(573) 751-7890
jay.atkins@ago.mo.gov

JEREMIAH J. MORGAN
D. SCOTT LUCY

Attorneys of Record for State of Missouri

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................1

    A.    Executive Order 14019. ............................................................................... 1
    B.    The Defendant agencies are currently implementing EO 14019. ................ 3
    C.    Congress and the States contest the constitutionality of Executive Order 14019........... 5

STANDING ............................................................................................................................7

ARGUMENT ..........................................................................................................................8

    I.    Executive Order 14019 is unconstitutional...................................................... 8
    A.    Executive Order 14019 violates the Elections and Electors Clauses............................. 8
    B.    Executive Order 14019 violates the Tenth Amendment. ............................... 14
    C.    Executive Order 14019 violates the Separation of Powers............................. 16
    II.    Executive Order 14019 violates federal statute. .......................................... 17
    A.    Executive Order 14019 violates the Hatch Act............................................. 17
    B.    The agency action directed by EO 14019 violates the Administrative Procedures Act.19
    III.    Expedited injunctive relief is the proper remedy. ...................................... 19
    A.    There is a substantial threat of irreparable harm.......................................... 21
    B.    The balance of equities and public interest support an injunction preserving the status quo. ....................................................................... 23
    C.    The requested injunction should be nationwide in scope. ............................ 24
    D.    A bond is neither necessary nor appropriate. ............................................... 25

CONCLUSION ......................................................................................................................26

## TABLE OF EXHIBITS

Exhibit 1              President Biden's Executive Order 14019

Exhibit 2              June 12, 2024, House Committee on Administration subpoenas

Exhibit 3              March 29, 2022, letter from Chairman of the House Committees and May 13, 2024, letter from members of the House Oversight Committee

Exhibit 4              *Heritage Foundation* memoranda

Exhibit 5              August 3, 2022, letter of Secretaries of State

Exhibit 6              October 10, 2022, statement of Texas Attorney General Paxton

Exhibit 7-A            *Keefer v. Biden* Amici curiae brief of members of United States Congress

Exhibit 7-B            *Keefer v. Biden* Amicus brief of Secretaries of State of West Virginia, Arkansas, Indiana, Louisiana, Mississippi, Montana, New Hampshire, and Wyoming

Exhibit 8              Secretary of State Ashcroft's declaration

Exhibit 9              County Clerk Bell's declaration

# TABLE OF AUTHORITIES

## CASES

*Ala. Ass'n of Realtors v. HHS,*
  594 U.S. 758, 766 (2021) ........................................................................................... 23

*America First Policy Institute v. Biden,*
  2:24-cv-00152-Z (N.D. Tex. 2024) ..................................................................... 6, 24

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ................................................................................................ 11

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
  570 U.S. 1, 17 (2013) .............................................................................................. 16

*Armstrong v. Exceptional Child Center, Inc.,*
  575 U.S. 320, 326-27 (2015) .................................................................................. 20

Baker Elec. Co-op., Inc. v. Chaske,
  28 F.3d 1466, 1473-74 (8th Cir. 1994) ................................................................. 20

*Biden v. Nebraska,*
  143 S. Ct. 2355 (2023) .................................................................................. 9, 10, 17

*Book People, Inc. v. Wong,*
  91 F.4th 318, 340 (5th Cir. 2024) .......................................................................... 21

*Brnovich v. Democrat Naitonal Committee,*
  594 U.S. 647, 672 (2021) ........................................................................................ 14

*BST Holdings v. OSHA,*
  17 F.4th 604, 618 (5th Cir. 2021) .......................................................................... 23

*Burdick v. Takushi,*
  504 U.S. 428 (1992) ................................................................................................ 12

*Burroughs v. United States,*
  290 U.S. 534, 544 (1934) ........................................................................................ 11

*Bush v. Gore,*
  531 U.S. 98 (2000) .................................................................................................. 24

*Carson v. Simon,*
  978 F.3d 1051, 1061 (8th Cir. 2020) ..................................................................... 22

*Chiafalo v. Washington*,
   591 U.S. 578, 588–589 (2020) ............................................................. 11

*City of Arlington v. FCC*,
   569 U.S. 290, 297 (2013) ..................................................................... 16

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
   779 F.3d 258, 264 (5th Cir. 2015) ....................................................... 21

*Cook v. Gralike*,
   531 U.S. 510 (2001) ............................................................................ 13

*Crawford v. Marion Cnty. Election Bd.*,
   553 U.S. 181, 191 (2008) ............................................................... 12, 13

*Dataphase Systems. Inc. v. C.L. Systems, Inc.*,
   640 F.2d 109, 113 (8th Cir. 1981) ....................................................... 20

*Ex Parte Young*,
   209 U.S. 123 (1908) ............................................................................ 19

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367, 382 (2024) ..................................................................... 21

*Gregory v. Ashcroft*,
   501 U.S. 452, 457 (1991) ..................................................................... 15

*Gundy v. United States*,
   139 S.Ct. 2116, 2123 (2019) ............................................................... 14

*Heartland Academy Community Church v. Waddle*,
   335 F.3d 684, 690 (8th Cir. 2003) ....................................................... 20

*Illinois Bd. of Elections v. Socialist Workers Party*,
   440 U.S. 173, 184 (1979) ..................................................................... 23

*Keefer v. Biden*,
   No. 1:25-00147 ...................................................................................... 6

*Keefer v. Biden*,
   No. 24-1716 (3rd Cir. 2024) ................................................................ 24

*Lee v. Virginia State Bd. of Elections*,
   843 F.3d 592, 605 (4th Cir. 2016) .................................................. 12, 13

*Loper Bright Enterprises v. Raimondo*,
   602 U.S. __ (2024) .............................................................................. 14

*Loper Bright Enterprises v. Raimondo*,
603 U.S. __, __ S.Ct.__ (2024) .................................................................. 16

*Louisiana v. Biden*,
55 F.4th 1017, 1034 (5th Cir. 2022) ................................................... 22, 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 561 (1992) ............................................................................ 21

*Marston v. Lewis*,
410 U.S. 679 (1973) .................................................................................... 14

*Medtronic, Inc. v. ETEX Corp.*,
No. Civ. 04-1355 ADM/AJB, 2004 WL 768945 (D. Minn. Apr. 12, 2004) ........................ 20

*Montana v. Biden*,
6:24-cv-01141 (D. Kan. 2024) .............................................................. 6, 24

*Murthy v. Missouri*,
603 U.S __, __ S.Ct. __ (2024) .................................................................. 21

*PCTV Gold, Inc. v. SpeedNet, LLC*,
508 F.3d 1137, 1143 (8th Cir. 2007) .......................................................... 20

*Phelps-Roper v. City of Manchester*,
697 F.3d 678, 692 (8th Cir. 2012) .............................................................. 23

*Phelps-Roper v. City of St. Charles, Mo.*,
782 F. Supp. 2d 789, 794 (E.D. Mo. 2011) ............................................... 25

*Phelps-Roper v. Nixon*,
545 F.3d 685, 690 (8th Cir. 2008) .............................................................. 23

*Printz v. U.S.*, 521 U.S. 898 (1997) ................................................... 15, 21

*R.J. Reynolds Vapor Co. v. FDA*,
65 F.4th 182, 194 (5th Cir. 2023) .............................................................. 22

*Stockslager v Carroll Elec. Coop. Corp.*,
528 F.2d 949, 951 (8th Cir. 1976) .............................................................. 25

*Storer v. Brown*,
415 U.S. 724, 730 (1974) ............................................................................ 12

*Tafflin v. Levitt*,
493 U.S. 455, 458 (1990) ............................................................................ 15

*Trump v. Anderson*,
   601 U.S. 100 (2024) ............................................................................................ 13

*Trump v. Hawaii*,
   138 S.Ct. 2392, 2407 (2018) ............................................................................ 19

*Trump v. United States*,
   603 U.S. __, 144 S.Ct. 2312 (2024) .......................................................... 11, 17

*U.S. Term Limits, Inc. v. Thornton*,
   514 U.S. 779 (1995) ............................................................................................ 13

*Wayman v. Southard*,
   23 U.S. (10 Wheat.) 1, 42-43 (1825) .............................................................. 14

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579, 585, 655 (1952) .......................................................................... 17

## CONSTITUTIONAL PROVISIONS

Art. I, § 4, cl. 1 ...................................................................................... 9, 10, 14

Art. II, § 1, cl. 2 .................................................................................... 9, 10, 11

Art. II, § 1, cls. 3, 4 ...................................................................................... 11

Article I, § 1 .................................................................................................. 10

Article II, § 1 ................................................................................................. 11

U.S. Const. Art. I §1 ..................................................................................... 14

## STATUTES AND REGULATIONS

2 U.S.C § 7 ..................................................................................................... 12

5 C.F.R. § 734.101 ........................................................................................ 18

5 U.S.C. § 706(2)(C) .................................................................................... 19

5 U.S.C. § 7323(a) ........................................................................................ 17

5 U.S.C. § 7324 ............................................................................................. 18

5 U.S.C. §§ 7321-26, in 1938 ...................................................................... 17

5 U.S.C. §§ 7321-7326 ................................................................................. 18

52 U.S.C. §§ 20502, 20506 .......................................................................... 16

## INTRODUCTION

On March 7, 2021, President Biden signed Executive Order 14019 (EO 14019).  **Exhibit 1.**  Executive Order 14019 requires all federal agencies to develop a plan to increase voter registration and participation and engage in get-out-the-vote efforts.  It further directs federal agencies to encourage, assist, and coordinate with third-party organizations.  President Biden's executive order is a partisan get-out-the-vote campaign using taxpayer funds, federal employees and government resources to aid the election of Democrat candidates and to influence the outcome of the 2024 General Election and elections beyond.

Executive Order 14019 is not authorized by any statute or law Congress has passed. Executive Order 14019 is unconstitutional and unlawful because it violates the Separation of Powers, the Elections Clause, the Tenth Amendment, and federalism by directing executive branch agencies to engage in election activity reserved to the States.  Executive Order 14019 violates federal law by directing federal agencies and federal employees to violate the Hatch Act, and the agencies implementing EO 14019 are doing so without complying with the Administrative Procedure Act.  This Court should immediately enjoin Defendants from implementing EO 14019.

## FACTUAL BACKGROUND

### A.    Executive Order 14019.

Executive Order 14019 was largely drafted by the third-party activist organization Demos, a far-left "think tank" with close ties to the Biden Administration.[1]  Executive Order 14019 requires federal agencies and their employees to solicit and enter into "partnership" with third-party

---

[1]    See   https://www.demos.org/policy-briefs/executive-action-advance-democracy-what-biden-harris-administration-and-agencies-can (last visited September 23, 2024).

nongovernment organizations to conduct voter registration drives, get-out-the-vote activities and harvest early and mail-in ballots.

Among other provisions, EO 14019 requires that "the head of each federal agency shall evaluate ways in which the agency can . . . promote voter registration and voter participation . . . in the course of activities or services that directly engage with the public – including through agency materials, websites, online forms, social media platforms, [information about how to] register to vote, how to request a vote-by-mail ballot, and how to cast a ballot in upcoming elections." EO 14019.3.

Executive Order 14019 further directs federal agencies, officials and employees "to facilitate seamless transition from agencies' websites directly to State online voter registration systems" and determine "ways to provide access to voter registration services and vote-by-mail activities or services that directly engage with the public." EO 14019.3(a)(ii), (iii).  Federal agencies are directed to "distribute[] voter registration and vote-by-mail ballot application forms, and provid[e] access to applicable State online systems," "assist[] applicants in completing voter registration and vote-by-mail ballot application forms," "solicit[] and facilitate[e] approved nonpartisan third-party organizations and State officials to provide voter registration services," and "promote and expand access to multilingual voter registration and election information . . ." EO 14019.3(a)(iii), (iv).

Executive Order 14019 also mandates that federal agencies issue voter identification documents, directing federal agencies to determine whether "any identity documents issued by the agency to members of the public can be issued in a form that satisfies State voter identification laws." EO 14019.3(a)(v).

In late February 2024, it became clear that EO 14019 was not a neutral program. Axios interviewed Vice President Harris and her staff, and then reported their explanation as revealing the Biden-Administration's voting policy; the order's purpose is "to try to boost turnout among key voting blocs this November," giving Democrats—including Vice President Harris herself—a partisan advantage. Eugene Scott, *VP Harris to announce Biden team's plans to boost voting access*, AXIOS (Feb. 27, 2024), https://tinyurl.com/nu77tch6.

**B.     The Defendant agencies are currently implementing EO 14019.**

Federal agencies are currently implementing EO 14019.  The Department of Homeland Security, for instance, is processing tens of millions of illegal migrants that are not United States citizens and are not eligible to vote and issuing these non-citizen migrants documents that allow them to travel throughout the nation including commercial air travel monitored by the Transportation Security Agency.  The documents issued will be (and are being) used by these non-citizen migrants who are illegally residing in the United States to register to vote and cast mail-in ballots.[2]  EO 14019.3(a)(v).

Executive Order 14019 purports to supplant or circumvent or, at a minimum, confound and confuse States' voter identification statutes and requirements by adding a category of voter identification documents issued by federal agencies.  These documents are not familiar to the state and state election officials.

In response to EO 14019, the U.S. Department of Housing and Urban Development instructed more than 3,000 public housing authorities, which manage approximately 1.2 million

---

[2] See Declaration of Kimberly Bell, McDonald County Clerk, remarks of Speaker Johnson of July 9, and the remarks of Speaker of the United States House Johnson in support of the federal Safeguard American Voter Eligibility (SAVE) Act House Resolution 8281.

public housing units across the country, to run voter registration drives in those units.[3] Federal housing officials also advised the local agencies on how to apply to become a "voter registration agency under the National Voter Registration Act," and how to set up drop boxes for ballots on the premises. *Id*. The United States Department of Justice will provide information about voting to individuals in federal custody, facilitate voting by those who remain eligible to do so while in federal custody, and educate individuals before reentry about voting rules and voting rights in their states.[4] The United States Department of Education directed eligible postsecondary institutions to use Federal Work Study funds to support voter registration activities.[5]

At the Department of the Interior, Bureau of Indian Education (BIE) staff are encouraging students at "K-12 schools to carry voter registration cards home to their parents." M.D. Kittle, 'Bidenbucks' Plan Uses Native American School Children in Voter Registration Scheme, THE FEDERALIST (July 31, 2024), https://tinyurl.com/bdm43vhk. BIE "oversees 183 schools on more than 60 Indian reservations in 23 states." *Id*.

Executive Order 14019 directs federal agencies to select third-party organizations to register voters, distribute vote-by-mail ballots, and engage in get-out-the-vote activities on federal

---

[3] See Fred Lucas, HUD Pushes Voter Registration Drives in Public Housing Under Biden's Executive Order, The Daily Signal (2022), https://www.dailysignal.com/2022/04/27/hud-pushes-voter-registration-drives-in-public-housing-under-bidens-executive-order/ (last visited September 23, 2024).

[4] See White House "Fact Sheet: Biden Administration Promotes Voter Participation with New Agency Steps" (September 28, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/09/28/fact-sheet-biden-administration-promotes-voter-participation-with-new-agency-steps/.

[5] See "Requirements for Distribution of Voter Registration Forms" (GEN-22-05) (April 21, 2022) https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2022-04-21/requirements-distribution-voter-registration-forms; See also "U.S. Department of Education Toolkit for the Promotion of Voter Participation for Students", https://www2.ed.gov/documents/press-releases/student-voter-toolkit.pdf.

agency property, using federal agency resources and federal government employees. But the federal agencies directed to take action by EO 14019 have not disclosed the specific steps and actions they are taking in response to EO 14019.[6] The federal agencies subject to EO 14019 have not engaged in the rule-making and administrative requirements necessary to implement the action President Biden directed the agencies to take in EO 14019. This is a violation of the Administrative Procedure Act.

### C.    Congress and the States contest the constitutionality of Executive Order 14019.

Recently, on June 12, 2024, the House Committee on Administration (the committee with jurisdiction of federal elections) subpoenaed fifteen Biden Administration cabinet officials requiring them to provide documents related to EO 14019. **Exhibit 2**.[7] The House Oversight and Accountability Committee is pursuing a separate investigation of EO 14019. See **Exhibit 3** (copy of March 29, 2022, letter from Chairman of the House Committees and May 13, 2024, letter from members of the House Oversight Committee). The House is also considering legislation that would repeal EO 14019. But, given the rapidly approaching November 2024 election, such a repeal would not provide relief from this unconstitutional and unlawful order, nor would a possible repeal address the harm the plaintiffs have suffered and will continue to suffer.

The Alabama, Arkansas, Florida, Georgia, Idaho, Indiana, Mississippi, Montana, Nebraska, Ohio, South Dakota, Wyoming, Tennessee, and West Virginia Secretaries of State requested that

---

[6] See **Exhibit 4** (copy of *Heritage Foundation* memoranda); see also *Am. First Legal Found. v. U.S. Dep't of Agric.*, CV 22-3029 (BAH), 2023 WL 4581313 (D.D.C. July 18, 2023) (agencies successfully asserted presidential communications privilege to avoid disclosing strategic plans for implementing EO 14019).

[7] The House subpoenaed the Departments of Transportation, Agriculture, Interior, Treasury, State, Homeland Security, Health and Human Resources, Energy, Education, Defense, Commerce, Justice, Labor, Housing and Urban Development, and the Office of Management and Budget. The subpoenas were directed to the secretaries or chairs of each of these executive branch agencies.

President Biden rescind EO 14019 because, "[i]nvolving Federal agencies in the [voter] registration process will produce duplicate registrations, confuse citizens and complicate the jobs of our county clerks and election officials. If implemented, the Executive Order would also erode the responsibility and duties of the state legislatures to their situational duty within the Election Clause." **Exhibit 5** (August 3, 2022, letter of Secretaries of State).

Texas Attorney General Paxton protested EO 14019 because the Order "allows [President Biden's] hand-picked political appointees to direct federal agencies in using taxpayer funds to register voters, distribute vote-by-mail ballots, help voters they've chosen to participate in the electoral process and engage in countless other quasi-election concerning activities at their political appointees' discretion." **Exhibit 6** (October 10, 2022, statement of Texas Attorney General Paxton.) See also *America First Policy Institute v. Biden,* 2:24-cv-00152-Z (N.D. Tex. 2024) (filed July 11, 2024). The States of Montana, Kansas, Iowa, South Dakota, Mississippi, Nebraska, North Dakota, Oklahoma and South Carolina have also challenged EO 14019. See *Montana v. Biden*, 6:24-cv-01141 (D. Kan. 2024) (complaint filed Aug. 13, 2024).

Twenty-six Pennsylvania state representatives and one state senator brought a challenge to EO 14019 in the United States District Court for the Middle District of Pennsylvania, *Keefer v. Biden*, No. 1:25-00147. See **Exhibits 7-A** (amici curiae brief of members of United States Congress) and **7-B** (amicus brief of Secretaries of State of West Virginia, Arkansas, Indiana, Louisiana, Mississippi, Montana, New Hampshire, and Wyoming). The Biden Administration responded by challenging the Pennsylvania legislators standing to bring a challenge to EO 14019. That challenge is currently pending before the Third Circuit (Case No. 24-1716).

In this action the State of Missouri, the Missouri and Arkansas Secretaries of State, and local election officials ask this Court to enter an injunction to prevent the irreparable harm the implementation of President Biden's unlawful and unconstitutional EO 14019 will cause.

## STANDING

Executive Order 14019 requires the States and local election officials to bear the costs and the burdens EO 14019 imposes upon state and local government.  As such, the Plaintiffs have standing to challenge the constitutionality and legality of EO 14019, seek declaratory relief and ask this Court to enjoin the implementation of EO 14019.  The State of Missouri and these state and local election officials have suffered "an injury in fact" in that EO 14019 directs federal agencies to enlist them to spend state and local funds and resources in responding to President Biden's EO 14019 get-out-the-vote scheme.

The EO 14019 get-out-the-vote scheme directs Federal agencies to solicit and submit voter registration applications and mail-in voting applications that will produce duplicate registrations, ineligible registrations and false or fraudulent absentee ballot applications and voter registrations, confuse citizens and complicate the jobs of county clerks and local election officials. See, Secretary of State Ashcroft's declaration, **Exhibit 8**.  Secretaries of State Ashcroft and Thurston, and the local election officials working under their direction will need to review and validate each of the new registrations generated by the defendant agencies and the third-party organizations as a result of EO 14019.  In this way, these election officials stand in the same situation as the sheriffs in *Printz*, 521 U.S. 898, who were required to conduct background checks on prospective handgun purchasers.

County Clerk Bell's experience exemplifies the problems local election officials face. **Exhibit 9** (Bell Declaration). One individual, an immigrant who had not yet been naturalized and was not yet a citizen, came to County Clerk Bell's office asking to be removed from the McDonald

County voter roll. *Id*. He was concerned that being on a voter roll would be viewed as illegal and would keep him from obtaining citizenship. *Id.* This individual's voter registration form was not filled out by him, but by someone at a Social Security Administration office. *Id*. County Clerk Bell was able to remove this individual from the voter roll until he became a citizen a few months later.

This is just one example of the many problems created by having federal agencies and third-party organizations submitting voter registration, mail-in ballot requests and harvesting ballots under a scheme that does not comport with state laws regulating elections. The burden and expense of reviewing and processing ineligible registrations, duplicate registrations, registrations containing errors, and mail-in ballots falls on local officials. Executive Order 14019 makes no appropriation for the cost state and local election officials will incur responding to the federal agency action directed by EO 14019.

The Plaintiffs have suffered and continue to suffer an injury-in-fact because, *inter alia*, these state and local election officials will be forced to bear the expenses required by the implementation of EO 14019 and pay such expenses from state and local revenue.  The damage and injury the Plaintiffs will suffer is occurring and is ongoing and will continue to occur unless this Court enjoins the defendant federal agencies from implementing EO 14019.

## ARGUMENT

### I.    Executive Order 14019 is unconstitutional.

### A.    Executive Order 14019 violates the Elections and Electors Clauses.

Executive Order 14019 violates the Elections Clause and the Seventeenth Amendment providing for the direct election of United States senators chosen by the voters of the respective States.  The Elections Clause provides in relevant part, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the *Congress* may at any time *by law* make or alter such Regulations, except as to the

Places of chusing Senators." Art. I, § 4, cl. 1. The Elections Clause further provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors," who in turn elect the President. Art. II, § 1, cl. 2. The Seventeenth Amendment provides "the electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislators.

As such, under the Elections Clause and the Seventeenth Amendment *the States* determine the "times, place and manner" of elections including representatives to the House and senators and presidential electors. Thus, unless *Congress* "makes or alter[s]" laws or "regulations" that expressly and explicitly regulate the conduct of federal elections, the constitutional authority to regulate and conduct federal elections is vested in the States. There is no provision of the constitution or of federal law authorizing the President or executive branch agencies to engage or participate in the conduct of elections in the manner EO 14019 provides. In essence, EO 14019 is "federalizing" and usurping the duties of the States and constitutes and unlawful *ultra vires* action by the President.

Executive Order 14019 is similar in several respects to the Biden Administration's order cancelling $430 billion in student loan debt. Six states (including Missouri) challenged Biden's student loan cancellation scheme because the edict lacked congressional authorization and violated the Separation of Powers. *See Biden v. Nebraska,* 143 S. Ct. 2355 (2023). The states moved to enjoin implementation of Biden's debt cancellation scheme. The Biden Administration responded by challenging the states' standing to bring the challenge. The Supreme Court held Missouri had standing to challenge the Department of Education's student loan cancellation plan. The Supreme Court held Biden's student loan debt cancellation scheme was unconstitutional because Congress did not authorize the Secretary of Education to cancel student loan debt by presidential fiat and the

9

cancelation of the debt lacked "clear congressional authorization." *Biden v. Nebraska,* 143 S. Ct. 2355, 2375 (2023).

Article I, § 1 provides the States have the primary authority to regulate and conduct federal elections and the States shall establish the qualifications requisite for individuals to cast a ballot and to adopt and enforce those regulations necessary to maintain the integrity of elections.[8]  The States (subject to the Equal Protection Clause and the Fourteenth, Nineteenth, and Twenty-Sixth Amendments) shall regulate the orderly conduct of elections and determine who is eligible to cast a ballot.[9]  The Elections Clause provides, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." Art. I, § 4, cl. 1.  The Electors Clause similarly provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors," who in turn elect the President.  Art. II, § 1, cl. 2.  The Elections Clause directs the States to determine the "time, place and manner" of elections including representatives to the House and Senate and the Presidential Electors.

---

[8] Congress may by specific statute designate a national election on the first Tuesday after the first Monday in November.  See 2 U.S.C. § 7.  And, pursuant to the Fourteenth Amendment, Congress may adopt statutes such as the Help America Vote Act of 2002, § 302(a), 42 U.S.C.A. § 15482(a), the Voting Rights Act of 1965 § 2(b), 42 U.S.C.A. § 1973(b), and the National Voter Registration Act of 1993, § 11(b)(1), 42 U.S.C.A. § 1973gg-9(b)(1).  But these are specific statutes passed by the House and Senate and signed by the President.  Executive Order 14019 is not such a law for *Congress* that "makes or alter[s]" state laws or "regulations" governing the conduct of elections.

[9] See, *Marston v. Lewis*, 410 U.S. 679, 681 (1973) (stating a fifty-day voter registration requirement was constitutional because it serves "the state's important interest in accurate voter lists"); *Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008) (upholding state requirement that individuals present photo identification before casting a ballot); *Brnovich v. Democratic National Committee*, 594 U.S. 647 (2021) (upholding state prohibition against ballot harvesting), *Republican Nat. Comm. v. Mi Familia Vote*, *et al*, 603 U.S. ___ (2024) (order denying stay challenging States' requirement of citizenship to vote).

The Supreme Court recently described the election authority vested in the states, in contrast to the limited role of the President:

> Indeed, the Constitution commits to the States the power to "appoint" Presidential electors "in such Manner as the Legislature thereof may direct." Art. II, § 1, cl. 2; see *Burroughs v. United States*, 290 U.S. 534, 544 (1934). "Article II, § 1's appointments power," we have said, "gives the States far-reaching authority over presidential electors, absent some other constitutional constraint." *Chiafalo v. Washington*, 591 U.S. 578, 588–589 (2020). By contrast, the Federal Government's role in appointing electors is limited. Congress may prescribe when the state-appointed electors shall meet, and it counts and certifies their votes. Art. II, § 1, cls. 3, 4. The President, meanwhile, plays no direct role in the process, nor does he have authority to control the state officials who do. And the Framers, wary of "cabal, intrigue and corruption," specifically excluded from service as electors "all those who from situation might be suspected of too great devotion to the president in office." The Federalist No. 68, at 459 (A. Hamilton); see Art. II, § 1, cl. 2.

*Trump v. United States*, 603 U.S. __, 144 S.Ct. 2312 (2024).

There is a difference between a *ballot* and a *vote*. A ballot is a piece of paper with circles to be filled in designating a specific candidate. A *vote* is a ballot that has been completed by a citizen eligible to cast a vote. Pursuant to their constitutional authority the states have adopted specific laws governing the fair and orderly conduct of elections. These state election laws and regulations include requirements for voter registration, voter identification, and the process by which local election officials oversee the conduct of the election and the counting of ballots. The purpose of these state election laws is to assure that elections are conducted fairly and honestly and that every eligible citizen has an equal opportunity to participate. This, in turn, gives the public confidence that the outcome of the election (especially in very close elections) is the will of the eligible voters, not an outcome that was rigged by some partisan faction.

States have a compelling interest in protecting the laws, integrity of elections, and, to that end, adopting laws and regulations to assure that only eligible citizens may cast a ballot that will be counted. In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428

(1992), the Court recognized that there must be "a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson*, 460 U.S. at 788 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). The Court explained further:

> To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes. Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. Nevertheless, the States' important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.

> *Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 605 (4th Cir. 2016).

One of the critical steps in assuring an honest election includes measures to prevent "stuffing the ballot box" by having ballots cast by ineligible individuals or fictional individuals counted. See *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). Executive Order 14019 undermines the States' ability to review and determine the qualification of individual eligibility to cast a ballot, enforce constitutional voter identification requirements, and maintain current and accurate voter rolls.

To the extent the Federal Government may "make or alter" "laws or regulations" governing the conduct of elections, it is *Congress,* not the *President*, who has the authority to "make or alter" rules concerning federal elections. For example, Congress passed a law establishing the national Election Day. See 2 U.S. § 7, "The Tuesday after the first Monday in November in every even numbered year, is established as the day for the election in each of the States and Territories of the United States." But, subject to Congress's specific and enumerated constitutional authority, the States are the primary authority regulating and conducting elections for federal office. Of course, each State's laws and procedures for the conduct of federal elections must be consistent with the other provisions of the Constitution and Bill of Rights. See *U.S. Term Limits, Inc. v. Thornton*,

514 U.S. 779 (1995), *Cook v. Gralike*, 531 U.S. 510 (2001), and *Trump v. Anderson*, 601 U.S. 100 (2024) ("States have no power under the Constitution to enforce Section 3 [of the Fourteenth Amendment] with respect to federal offices, especially the Presidency.").

Each state establishes these requirements an individual must satisfy in order to cast a ballot such as being older than eighteen, residing in the relevant precinct, being a citizen of the United States and the state, and having requested to vote. Each state has voter rolls listing the individuals registered and eligible to cast a ballot and has adopted laws and regulations specifying the documents that satisfy the identification requirements to establish the individual seeking to cast a ballot is in fact the individual registered and eligible to cast a ballot, and to cast only one ballot. See *Lee v. Virginia*, supra.

The States, and state officials responsible for conducting elections, have a compelling constitutional interest in assuring elections are conducted in a fair, honest, and orderly manner. Pursuant to these constitutional grants of authority, States have established voter eligibility, registration, and identification requirements applicable to those persons seeking to cast a ballot in state and federal elections.  The various state laws specify the voter identification required by each State. Other than certain designated forms of photo identification (such as passports, military and official employment identification issued to federal employees) the state laws do not designate documents issued by federal agencies such as those contemplated in EO 14019 to be acceptable photo identification necessary to validate a person's eligibility to cast a ballot. State and local election officials are trained to follow these requirements to assure elections are conducted in a fair, honest, and orderly manner.  See *supra Crawford*, *Brnovich v. Democrat National Committee*, 594 U.S. 647, 672 (2021) ("One strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of

citizens to cast ballots that carry appropriate weight. Fraud can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome."*)*, and *Marston v. Lewis*, 410 U.S. 679 (1973).  The States' interest includes the maintenance of a current and accurate voter roll.  See *Marston*.

Should President Biden claim Congress delegated him the authority to order federal agencies to take that action directed in EO 14019, this is wrong.  It is wrong in the first instance because Congress did not pass any statute delegating President Biden such authority.  And it is wrong in the second instance because Congress does not possess the authority to delegate to President Biden such authority.  Congress may not delegate its legislative powers to the Executive branch.  "All legislative Powers … [are] vested in [the] Congress of the United States," and "Congress … may not transfer to another branch 'powers which are strictly and exclusively legislative.'"  U.S. CONST. Art. I §1; *Gundy v. United States*, 139 S.Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825)).  The power to override traditional State sovereignty over the conduct of elections is exclusively vested in "the Congress" as a lawmaking power and in no other branch of the federal government.  See U.S. CONST. Art. I, § 4, cl. 1; see also *Loper Bright Enterprises v. Raimondo*, 602 U.S. __ (2024).  This means that the States through their legislature, not the President, regulate the conduct of elections, and only Congress by adopting a statute may "make or alter" a state's laws or rules governing the conduct of elections.  Presidential executive orders cannot override the State's constitutional authority to conduct elections.

## B. Executive Order 14019 violates the Tenth Amendment.

Executive Order 14019 unconstitutionally violates state sovereignty and federalism by pressing state and local election officials into federal service to participate in this get-out-the-vote scheme by processing, reviewing and validating voter registration forms and handling mail-in

ballot requests at the expense of state and local government.  The implementation of EO 14019 will require state and local election officials to spend state and local funds and state and local election officials and employees to devote resources to processing ineligible voter registrations, mail-in ballot requests and maintaining an accurate voter roll.  This expense is caused by the implementation of EO 14019.  In *Printz v. U.S.*, 521 U.S. 898 (1997), the Supreme Court held a federal gun registration scheme violated the Tenth Amendment because it imposed the costs of implementing the federal registration scheme upon state and local government.

The federal government may not compel States and state officials to work for the federal government or pay the cost of implementing an executive order without the State's agreement. Executive Order 14019 is not an arrangement the State of Missouri, Arkansas or their state and local election officials nor any other State has agreed to.  Executive Order 14019 does not provide funds to the States and state election officials to reimburse the expense EO 14019 requires these state and local election officials to incur.  And Congress has not appropriated any funds to reimburse state and local election officials for the cost of responding to federal agencies implementing EO 14019.

The EO 14019 get-out-the-vote scheme by which President Biden directs federal agencies to spend federal resources and direct federal employees to "partner" with third-party organizations in a get-out-the-vote and ballot harvesting campaign that enrolls state and local election officials and requires state and local election officials to spend state and local revenue to implement, violates the "system of 'dual sovereignty'" the constitution established. *See Printz,* 521 U.S. at 918 (citing and quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) and *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).

C.    **Executive Order 14019 violates the Separation of Powers.**

The U.S. Constitution is designed to protect against government tyranny by separating the powers the people granted the federal government between the Legislative, Executive, and Judicial branches.  See *Federalist* Fifty-One.  The Executive Branch (that is to say, the President) has no authority to act or to spend funds beyond that authority granted the President as Chief Executive and as delegated by Congress.  See *Loper Bright Enterprises v. Raimondo*, 603 U.S. __, __ S.Ct.__ (2024), 2024 WL 3208360, at *22 (S.Ct. June 28, 2024) ("when a particular statute delegates authority to an agency *consistent with constitutional limits*, courts must respect the delegation, *while ensuring that the agency acts within it*") (emphasis added).  Executive branch agencies may not lawfully act beyond that authority Congress has constitutionally delegated to the respective agency.  See *id.*  A federal agency's "power to act and how [it is] to act is authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

There is no statute by which Congress authorized federal agencies to take the action President Biden directs executive branch agencies to take in EO 14019.  President Biden's EO 14019 is not authorized by the NVRA or any other federal statute. *See* 52 U.S.C. §§ 20502, 20506. Thus EO 14019 does not proceed from "part of the power to be conferred upon the national government' by the Elections Clause." *Arizona v. Inter Tribal Council of Ariz., Inc*., 570 U.S. 1, 17 (2013) (quoting The Federalist, No. 60, at 371 (A. Hamilton)).

The point here is that no federal statute grants President Biden or the executive agencies authority to engage in that conduct EO 14019 directs.  And EO 14019 was not adopted as required by the Administrative Procedure Act (APA).  "No matter the context, the President's authority to act necessarily 'stem[s] either from an act of Congress or from the Constitution itself.' . . . If the President claims authority to act but in fact exercises mere 'individual will' and 'authority without

law,' the courts may say so." *Trump v. United States*, 603 U.S. __, 144 S.Ct. 2312, 2327 (2024) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585, 655 (1952)).

Executive Order 14019 stands in marked contrast to *legislation Congress* has adopted concerning the conduct of federal elections. For example, consider the Voting Rights Act of 1965, the National Voter Registration Act of 1993, and the Help America Vote Act of 2002. These acts illustrate the fundamental point that, when the federal government takes action concerning the conduct of elections, Congress must pass a statute, and the President must only act pursuant to that congressional authorization. And, furthermore, the agency action taken must comply with the requirements of the APA.

Thus, EO 14019, standing alone as a presidential edict without any authorization from Congress, violates the Separation of Powers.  Executive Order 14019 is "about one branch of government arrogating to itself power belonging to another." *Biden v. Nebraska*, 143 S.Ct. at 2373.  Indeed, as explained below, EO 14019 is not just action by President Biden *without* congressional authorization, it is an order by President Biden that is *contrary* to law because EO 14019 directs federal officials and employees to take action forbidden by the Hatch Act.

## II.    Executive Order 14019 violates federal statute.

### A.    Executive Order 14019 violates the Hatch Act.

Congress adopted the Hatch Act, 5 U.S.C. §§ 7321-26, in 1938.  Under the Hatch Act, with limited exceptions, federal employees *may not* "use [their] official authority or influence for the purpose of interfering with or affecting the result of an election; [ ] knowingly solicit, accept, or receive a political contribution from any person ... or [ ] knowingly *solicit or discourage the participation* in any political activity of any person who" has applied for employment with or has a matter involving a contract, license, or permit pending before the federal agency or is being audited or investigated by that agency or subject to the agency's enforcement action.  *Id.* 5 U.S.C

§ 7323(a) (emphasis added).  Executive Order 14019 unlawfully directs federal employees to violate the Hatch Act, 5 U.S.C. §§ 7321-7326.

The Office of Special Counsel wrote an advisory opinion stating:

The Hatch Act, 5 U.S.C. §§ 7321-7326, governs the political activity of federal executive branch employees, including XXX employees. The Act permits most covered employees to actively participate in partisan political management and partisan political campaigns. Covered employees, however, are prohibited from, among other things, engaging in political activity while on duty, in any room or building occupied in the discharge of official duties by an individual employed or holding office in the Government of the United States or any agency or instrumentality thereof, while wearing a uniform or official insignia identifying the office or position of the employee, or using any vehicle owned or leased by the Government of the United States or any agency or instrumentality thereof. 5 U.S.C. § 7324. Political activity has been defined as activity directed toward the success or failure of a political party, candidate for a partisan political office or partisan political group. 5 C.F.R. § 734.101.

Therefore, *the Hatch Act would prohibit a XXX employee, while on duty or in his or her workplace, from participating in a partisan voter registration drive, e.g., a drive aimed at helping a political party or candidate succeed.*

(emphasis added).

Contrary to the Hatch Act, President Biden's EO 14019 directs federal government employees and officials to "directly engage with the public" and "identify documents issued by the agency to members of the public" that "facilitate" a get-out-the-vote and ballot harvesting campaign to register individuals receiving government benefits and services to vote. Federal agencies are directed to develop "a strategic plan outlining the ways … the agency can promote voter registration and voter participation."  Even more, EO 14019 directs executive agencies to "solicit[] and facilitate[] approved nonpartisan third-party organizations and State officials to provide voter registration services on agency premises."

Executive Order 14019 presents a further constitutional violation when it limits the "partnership" to "nonpartisan third-party organizations" the federal agencies are directed to solicit and encourage in voter-registration and ballot harvesting efforts.  Who "approves" the third-party

organizations?  What criteria must a third-party organization submit to be "approved" to receive the federal agency support for a voter registration or mail-in ballot effort?  Who determines if a "third-party" organization is "nonpartisan?"  Executive Order 14019 specifies no procedures or guidance by which such designations are to be made.

### B.     The agency action directed by EO 14019 violates the Administrative Procedures Act.

The actions the agency defendants have taken to implement EO 14019 constitute final agency action.

The APA authorizes courts to hold unlawful and set aside final agency action that is done "without observance of the procedure required by law." 5 U.S.C. § 706(2)(C). Any agency decision that it would provide voter registration services, outside of accepting State designations under the NVRA, is a substantive rule that needs to go through notice-and-comment.

Numerous federal agencies—including the agency defendants—are implementing EO 14019 by engaging in voter registration activities, as described above, and have made those decisions without engaging in notice-and-comment. Furthermore, many actions agencies taken under EO 14019 constitute reversals of agency positions or amend regulations. Those actions needed to have been done via public notice-and-comment procedures, but they were not.

As a result, those actions must be declared unlawful, enjoined, and set aside.

### III.    Expedited injunctive relief is the proper remedy.

For well over a century the Supreme Court has recognized the ability to seek injunctive relief in federal court for violations of the Constitution. *Ex Parte Young*, 209 U.S. 123 (1908); *Trump v. Hawaii*, 138 S.Ct. 2392, 2407 (2018). Writing for the Court in 2015, Justice Scalia observed that "we have long held that federal courts may in some circumstances grant injunctive relief . . . with respect to violations of federal law by state officials, but also with respect to

violations of federal law by federal officials." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326-27 (2015). The authority of courts to "enjoin unconstitutional actions by state and federal officers" is a longstanding judicial remedy derived from a court's inherent equity powers. *Id*. at 327.

"In determining a litigant's right to preliminary injunctive relief the Court considers four factors: (1) the threat of irreparable injury to the plaintiff; (2) the balance of harm to the plaintiff if relief is not granted and harm to the defendant if an injunction is issued; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." *Medtronic, Inc. v. ETEX Corp.,* No. Civ. 04-1355 ADM/AJB, 2004 WL 768945 (D. Minn. Apr. 12, 2004) (citing *Dataphase Systems. Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir. 1981)).

Likelihood of success on the merits requires that the movant's position is supported by governing law. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1473-74 (8th Cir. 1994), and *Dataphase*, 640 F.2d at 113. At this preliminary stage, the court does not decide whether the party seeking relief will ultimately win. *PCTV Gold, Inc. v. SpeedNet, LLC,* 508 F.3d 1137, 1143 (8th Cir. 2007). Although preliminary injunctive relief cannot be issued if the movant has no chance on the merits, Plaintiffs are "not required to prove a mathematical (greater than fifty percent) probability of success on the merits." *Heartland Academy Community Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003).

Plaintiffs have demonstrated (a) they are and will continue to suffer significant harm from the implementation of EO 14019; (b) President Biden and the executive agencies will suffer no legitimate harm from an injunction while the harm to the plaintiffs will be substantial; (c) for those reasons explained below the plaintiffs will succeed on the merits; and (d) preserving the status quo by enjoining implementation of EO 14019 is in the public interest.

Plaintiffs have demonstrated that EO 14019 is unconstitutional and violates federal laws. Plaintiffs have demonstrated that EO 14019 will cause concrete, imminent injury in the form of compliance costs and other burdens and injury imposed upon the state and local election officials.  See *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements."). See also, *Murthy v. Missouri*, 603 U.S __, __ S.Ct. __ (2024), and *Printz v. United States*, 521 U.S. 898, 825-26 (1997). The declaration of Secretary of State Ashcroft (**Exhibit 8)**, letter from the Secretaries of State (**Exhibit 5**), statement of Texas Attorney General Paxton (**Exhibit 6**), describe some of the ways EO 14019 imposes unreimbursed costs and expenses upon the States and local election officials.

Totally apart from, and in addition to, the uncompensated costs EO 14019 imposes upon state and local government officials, Executive Order 14019 mandates action that violates the State's compelling interest in assuring elections are conducted in an orderly, fair, and honest manner and violates the Tenth Amendment by compelling states to incur significant costs of implementing EO 14019.  This injury can only be redressed by this Court enjoining implementation of EO 14019.

**A.    There is a substantial threat of irreparable harm.**

"An irreparable harm is one for which there is no adequate remedy at law." *Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024). "If a plaintiff is an object of a regulation 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Denial of injunctive relief will result in irreparable harm to Plaintiffs because without the injunction, the unlawful executive actions will continue and be an ongoing violation of the Constitution and federal law. Plaintiffs will also suffer the "irreparable harm of nonrecoverable compliance costs." *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 194 (5th Cir. 2023) (citation omitted). The Fifth Circuit has recognized that "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). These compliance costs do not have to be quantified but must only be more than *de minimis*. *Id.* at 1035. The declarations of Secretary Ashcroft and McDonald County Clerk Bell demonstrates the injury and costs are not *de minimis*.

Plaintiffs will suffer irreparable harm in the form of nonrecoverable compliance costs without the Court's immediate intervention and a loss of integrity in the voter rolls and compromised integrity of the election administration. *See* Plaintiffs' Declarations, **Exhibits 8** and **9**. The potential for harm is ongoing in that the denial of injunctive relief will embolden the defendants to continue to violate established constitutional rights before the upcoming presidential election and beyond. "The precedent that it would set to allow an executive branch official to negate the duly-enacted election laws of a state as they pertain to a presidential election is toxic to the concepts of the rule of law and fair elections." *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020). To not enjoin the unconstitutional illegal implementation of EO 14019 will cause injury including, most notably, compromising the integrity of the 2024 Presidential election. Executive Order 14019 is a genie that cannot be put back in the bottle. This Court should issue a preliminary injunction to preserve the status quo.

**B.      The balance of equities and public interest support an injunction preserving the status quo.**

Any argument that President Biden and the executive branch defendants would be harmed by issuance of a preliminary injunction preserving the status quo and enjoining implementation of EO 14019 is frivolous.  An injunction is in the public's interest. "Any interest [the government] may claim in enforcing an unlawful [rule] is illegitimate." *BST Holdings v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Indeed, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021).

It is undeniably in the public interest that President Biden and federal agencies comply with the Constitution. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 692 (8th Cir. 2012) (en banc) ("[I]t is always in the public interest to protect constitutional rights."). And elections are "of the most fundamental significance under our constitutional structure." See *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).

An injunction against the implementation of EO 14019 will not harm the public interest because it will merely preserve the status quo.  See *Louisiana v. Biden*, 55 F.4th at 1035. On the other hand, Plaintiffs have shown they would incur substantial costs in order to implement EO 14019's requirements and, more important, the integrity of the 2024 General Election will be compromised should EO 14019 be implemented. The State of Missouri, Missouri and Arkansas Secretaries of State, and County Clerk Bell and Director of Elections Bahr have suffered, and continue to suffer, an injury-in-fact because, *inter alia*, these state and local election officials will be forced to bear the expenses caused by EO 14019 and to pay for these costs from state and local revenue. Further, the implementation of EO 14019 will make the training of local election officials

such as poll workers and election judges more difficult and costly.  This injury is directly traceable to EO 14019 because of its direct impact on Missouri and Arkansas elections.

The injury can only be redressed by this Court enjoining EO 14019 because there is still time for the illegal and unconstitutional scheme described in EO 14019 to be stopped before the November General Election, even if some damage has been done.

**C.    The requested injunction should be nationwide in scope.**

The preliminary injunction should be national in scope and not limited to only Missouri and Arkansas.  Executive Order 14019 is national in scope and the implementation of EO 14019 is not limited to only the federal agency action in the Plaintiff States. The administration and conduct of the 2024 General Election is currently underway with all States and Territories taking action to prepare for the conduct of the election including voter registration and mail-in ballots. Executive Order 14091 is equally unlawful and unconstitutional whether the activities EO 14019 directs are conducted in one state or in all fifty states.  Thus, the preliminary injunction must be issued against the defendant agencies applicable to the entire nation.  The constitutionality and legality of EO 14019 is being challenged in at least three other federal cases. See *America First Policy Institute v. Biden,* 2:24-cv-00152-Z (N.D. Tex. 2024) (pending); *Montana v. Biden*, 6:24-cv-01141 (D. Kan. 2024) (pending); *Keefer v. Biden*, No. 24-1716 (3rd Cir. 2024) (pending).

The Equal Protection Clause requires the election be conducted in a uniform and equal manner.  See *Bush v. Gore*, 531 U.S. 98 (2000).  To allow these federal agencies to conduct the get-out-the-vote and ballot harvesting activities directed by EO 14019 in some states but enjoin that activity in the Plaintiff states would result in the General Election being conducted in a disparate manner.  A patchwork implementation of EO 14019 would be a further constitutional violation under *Bush v. Gore* and the Equal Protection Clause.

The urgency of this Court issuing a national injunction against implementation of EO 14019 and preserving the status quo is demonstrated by the additional facts that: (1) the federal agencies who are the defendants are resisting congressional subpoenas regarding EO 14019 and are hiding their actions implementing EO 14019; (2) voter registration and absentee ballot deadlines are approaching and in some states early voting has already begun; and (3) election officials are currently being trained for the imminent November election and enforcement of state laws and regulations governing the conduct of elections including identification requirements affected by EO 14019.

**D.      A bond is neither necessary nor appropriate.**

Federal Rule of Civil Procedure 65(c), provides this court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "The amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion."  *Stockslager v Carroll Elec. Coop. Corp.,* 528 F.2d 949, 951 (8th Cir. 1976).

Here, a bond is neither necessary or appropriate and, if required, would further violate Plaintiffs' constitutional and statutory rights by causing them to have to pay to assert and defend this important challenge to the unconstitutional and unlawful implementation of EO 14019. Moreover, enjoining the enforcement of EO 14019 to preserve the status quo will not impose any monetary requirements on the defendant agencies, but would actually relieve them of duties they were unconstitutionally directed to undertake by EO 14019. Consequently, Plaintiff requests that no bond be imposed should an injunction issue. See *Phelps-Roper v. City of St. Charles, Mo*., 782 F. Supp. 2d 789, 794 (E.D. Mo. 2011) (not requiring a bond).

**CONCLUSION**

Executive Order 14019 is an unconstitutional and unlawful effort to use taxpayer funds and the federal government's resources and employees in a partisan get-out-the-vote effort to influence the November General Election and elections beyond. This Court should preserve the status quo by issuing a preliminary order enjoining President Biden and the executive branch agencies from implementing EO 14019 or taking any action or spending any funds directed by EO 14019. For those reasons explained above, this injunction should be national in scope.

Respectfully submitted this 25th day of September, 2024.

*/s/ Mark F. (Thor) Hearne, II*
MARK F. (THOR) HEARNE, II
*True North Law, LLC*
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 296-4000
thor@truenorthlawgroup.com

Attorney of Record for Jay Ashcroft,
John Thurston, Kimberly Bell, and Kurt Bahr

*/s/ Jay Ashcroft*
Secretary of State Jay Ashcroft
(pro hac vice application pending)

*/s/ Frank Jung*
Frank Jung, General Counsel
(pro hac vice application pending)
600 W. Main
Jefferson City, MO 65101

*/s/ James S. Atkins*
JAMES S. ADKINS
ANDREW BAILEY
*Office of the Attorney General of Missouri -
Jefferson City*
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102-0899
(573) 751-7890
jay.atkins@ago.mo.gov

Attorneys of Record for State of Missouri

*/s/ Jeremiah J. Morgan*
JEREMIAH J. MORGAN

*/s/ D. Scott Lucy*
D. SCOTT LUCY

27