**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

JAY ASHCROFT, et al.,                    )
                                         )
    Plaintiffs,                          )
                                         )
v.                                       )          Case No. 4:24-CV-01062 SEP
                                         )
JOSEPH BIDEN, et al.,                    )
                                         )
    Defendants.                          )

---

THE STATE OF MISSOURI,                   )
ex rel. ANDREW BAILEY, in his            )
official capacity as                     )
Missouri Attorney General,               )
                                         )
    Plaintiff,                           )
                                         )          Case No. 4:24-CV-01063
v.                                       )
                                         )
JOSEPH BIDEN, et al.,                    )
                                         )
    Defendants.                          )

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR AN EXPEDITED PRELIMINARY INJUNCTION**

---

MARK F. (THOR) HEARNE, II
*True North Law, LLC*
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 296-4000
thor@truenorthlawgroup.com

Attorney of Record for Jay Ashcroft,
John Thurston, Kimberly Bell, and Kurt Bahr

Secretary of State Jay Ashcroft
(pro hac vice application pending)
Frank Jung, General Counsel
(pro hac vice application pending)
600 W. Main
Jefferson City, MO 65101

JAMES S. ADKINS
ANDREW BAILEY
*Office of the Attorney General of Missouri -
Jefferson City*
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102-0899
(573) 751-7890
jay.atkins@ago.mo.gov

JEREMIAH J. MORGAN
D. SCOTT LUCY

Attorneys of Record for State of Missouri

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.  This Court has jurisdiction, and the Plaintiffs have standing. ...................................... 3

    A. General Standing Requirements. ........................................................................... 3

    B. Defendants' implementation of EO 14019 is injuring Plaintiffs. ............................ 5

        1.  The actions EO 14019 directs the defendant federal agencies to take unlawfully consume state and local election officials' resources. ..................... 5

        2.  Executive Order 14019 unconstitutionally violates States' compelling interest in the integrity of elections. ................................................................. 9

        3.  Plaintiffs need only show likely injury, not "but-for" causation, to establish standing. ............................................................................................................. 11

    C. Plaintiffs have satisfied the standards necessary to establish their standing to challenge EO 14019. .............................................................................................. 13

II. Plaintiffs are likely to prevail on the merits of their challenge to Executive Order 14019. .......................................................................................................................... 14

    A. Defendants mischaracterize the partisan intention and effect of EO 14019. ......... 14

    B. Executive Order 14019 violates the Separation of Powers. ................................... 16

    C. Executive Order 14019 violates principles of federalism. ..................................... 18

III. A preliminary injunction against Defendants from implementing EO 14019 is necessary to prevent Plaintiffs from being irreparably harmed. ................................... 20

    A. A preliminary injunction is the proper remedy to prevent irreputable harm. ......... 20

    B. The Defendants' objection to when the Plaintiffs filed this action and sought an injunction is no reason why a preliminary injunction should not be granted. ................................................................................................................. 21

C. The injunction should be immediate. ........................................................ 23

D. The injunction should be national in scope. ........................................................ 23

CONCLUSION ........................................................ 24

## TABLE OF AUTHORITIES

**CASES**

*AARP v. U.S. Equal Emp. Opportunity Comm'n,*
226 F. Supp. 3d 7 (D.D.C. 2016)..................................................................................................22

*Alaska Dep't of Env't Conservation v. EPA,*
540 U.S. 461 (2004) ....................................................................................................................17

*Am. Farm Bureau Fed'n v. EPA,*
792 F.3d 281 (3rd Cir. 2015)....................................................................................................8, 12

*Am. First Pol'y Inst. v. Biden,*
2:24-cv-152-Z (N.D. Tex.) ............................................................................................................3

*Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n,*
576 U.S. 787 (2015) ......................................................................................................................5

*Ashby v. White,*
92 Eng. Rep. 126 (1703)................................................................................................................8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................1, 2, 4, 13

*Atorie Air, Inc. v. FAA,*
942 F.2d 954 (5th Cir. 1991)......................................................................................................17

*Barrick Goldstrike Mines Inc. v. Browner,*
215 F.3d 45 (D.C. Cir. 2000)......................................................................................................17

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................1, 2, 4, 13

*Biden v. Nebraska,*
143 S. Ct. 2355 (2023) ................................................................................................................23

*Boire v. Pilot Freight Carriers, Inc.,*
515 F.2d 1185 (5th Cir. 1975)....................................................................................................22

*Booth v. Hvass,*
302 F.3d 849 (8th Cir. 2002) ......................................................................................................13

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.,*
229 F.3d 254 (3d Cir. 2000)........................................................................................................21

*Brown v. Medtronic, Inc.,*
628 F.3d 451 (8th Cir. 2010) ......................................................................................................13

iv

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ............................................................................................9

*Burson v. Freeman,*
   504 U.S. 191 (1992) ..........................................................................................10

*Bush v. Gore,*
   531 U.S. 98 (2000) ............................................................................................23

*Ciba-Geigy Corp. v. EPA,*
   801 F.2d 430 (D.C. Cir. 1986) ........................................................................18

*Citibank, N.A. v. Citytrust,*
   756 F.2d 273 (2d Cir. 1985) .............................................................................22

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.,*
   144 S. Ct. 2440 (2024) .....................................................................................11

*Crawford v. Marion Cnty. Election Bd.,*
   553 U.S. 181 (2008) .......................................................................................9, 10

*Czyzewski v. Jevic Holding Corp.,*
   580 U.S. 451 (2017) ............................................................................................8

*Dataphase Sys., Inc. v. C L Sys., Inc.,*
   640 F.2d 109 (8th Cir. 1981) .............................................................................2

*Dep't of Commerce v. New York,*
   588 U.S. 7528 (2019) .....................................................................................5, 17

*Elrod v. Burns,*
   427 U.S. 347 (1976) ..........................................................................................20

*Farace v. Indep. Fire Ins. Co.,*
   699 F.2d 204 (5th Cir. 1983) ............................................................................22

*Fish v. Kobach,*
   304 F. Supp. 3d 1027 (D. Kan. 2018) ...............................................................9

*Food & Drug Admin. v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) ............................................................................................6

*Frozen Foods Express v. United States,*
   351 U.S. 40 (1956) ............................................................................................18

*Gen. Elec. Co. v. EPA,*
   290 F.3d 377 (D.C. Cir. 2002) ........................................................................18

*Huizenga v. Indep. Sch. Dist. No. 11,*
    44 F.4th 806 (8th Cir. 2022) ............................................................................................... 13

*Keefer v. Biden,*
    No. 1:24-CV-00147, 2024 WL 1285538 (M.D. Pa. Mar. 26, 2024) ........................................ 3

*Lee v. Virginia State Bd. of Elections,*
    843 F.3d 592 (4th Cir. 2016) ............................................................................................... 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ............................................................................................................. 11

*Lujan v. Def's of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................................... 4

*Massachusetts v. E.P.A.,*
    549 U.S. 497 (2007) ............................................................................................................. 12

*McGowan v. Maryland,*
    366 U.S. 420 (1961) ............................................................................................................... 8

*Missouri v. Biden,*
    2024 WL 3104514 (E.D. Mo. 2024), *aff'd,* 112 F.4th 531 (8th Cir.2024) ................................ 24

*Nebraska v. Biden,*
    52 F.4th 1044 (8th Cir. 2022) .............................................................................................. 23

*Papasan v. Alain,*
    478 U.S. 265 (1986) ............................................................................................................... 2

*Printz v. U.S.,*
    521 U.S. 898 (1997) ............................................................................................................... 6

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) ........................................................................................................... 10, 20

*Republican Nat'l. Comm. v. Democratic Nat'l Comm.,*
    589 U.S. 423 (2020) ............................................................................................................. 20

*Rest. L. Ctr. v. U.S. Dep't of Labor,*
    66 F.4th 593 (5th Cir. 2023) ................................................................................................. 8

*Rodgers v. Bryant,*
    942 F.3d 451 (8th Cir. 2019), *rehearing en banc denied,* 953 F.3d 517 (2020). ...................... 24

*Safety-Kleen Sys., Inc. v. Hennkens,*
    301 F.3d 931 (8th Cir. 2002) ............................................................................................... 22

*Sierra Club, Lone Star Ch. v. Cedar Point Oil Co. Inc.*,
   73 F.3d 546 (5th Cir. 1996) ..................................................................................................11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................................................................................4

*SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) ...............................................................................................13

*Symetra Life Ins. Co. v. Rapid Settlements Ltd.*,
   612 F. Supp. 2d 759 (S.D. Tex. 2007)...................................................................................22

*Texas v. Biden*,
   10 F.4th 538 (5th Cir. 2021) .................................................................................................18

*Texas v. EEOC*,
   933 F.3d 433 (5th Cir. 2019) ..........................................................................................17, 18

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) .........................................................................................4, 5, 18

*Texas v. United States*,
   50 F.4th 498 (5th Cir. 2022)..................................................................................................12

*The Found. For Gov't Accountability v. United States*,
   2:22-cv-252 (M.D. Fla.) .........................................................................................................15

*Tough Traveler, Ltd. v. Outbound Prod.*,
   60 F.3d 964 (2d Cir. 1995).....................................................................................................22

*Trump v. United States*,
   603 U.S. ___, 144 S. Ct. 2312 (2024) ...................................................................................20

*Tuter v. Freud Am., Inc.*,
   4:22-CV-00282-RK, 2022 WL 4636225 (W.D. Mo. Sept. 30, 2022)........................................4

*U.S. Dep't of Com. v. New York*,
   588 U.S. 752 (2019.................................................................................................................12

*United States v. Students Challenging Reg. Agency Procs.*,
   412 U.S. 669 (1973) .................................................................................................................8

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) .................................................................................................................8

*Valente v. Larson*,
   637 F.2d 562 (8th Cir. 1981), *aff'd*, 456 U.S. 228 (1982) ........................................................8

*VanDerStok v. Garland,*
   625 F. Supp. 3d 570 (N.D. Tex. 2022) .......................................................................21

*Wages & White Lion Invs., LLC v. FDA,*
   16 F.4th 1130 (5th Cir. 2021) ......................................................................................9

*Ward v. Thompson,*
   No. 22-16473, 2022 WL 14955000 (9th Cir. Oct. 22, 2022) .....................................22

*Webb v. Portland Manuf'g Co.,*
   29 F. Cas. 506 (C.C.D. Me. 1838) ...............................................................................8

## STATUTES

28 U.S.C. § 2201 ...............................................................................................................1

## OTHER AUTHORITIES

11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. & PROC. § 2948.1
   ........................................................................................................................................21

*Budd, Hagerty, Colleagues Renew Demand for Transparency on Taxpayer-Funded Voter
   Mobilization,* Off. of U.S. Sen. Ted Budd (2023) ......................................................15

*Executive Action to Advance Democracy: What the Biden Harris Administration and the
   Agencies Can Do to Build a More Inclusive Democracy,* Demos (Dec. 3, 2020) ...................14

H.R.1, 117th Cong. (2021) ...............................................................................................18

*Long-Term Unemployed Survey,* Kaiser Family Foundation/NPR (Dec. 2011) ...........................15

*Report of the Comm'n on Fed. Election Reform, Building Confidence in U.S. Elections* 46 (Sept.
   2005) (The Carter-Baker Commission).......................................................................11

Rich Morin, *The Politics and Demographics of Food Stamp Recipients,* Pew Research Center
   (July 12, 2013)...............................................................................................................15

Stewart Whitson, *Biden's Unlawful Plan to Federalize Elections,* The American Spectator (Oct.
   22, 2021).........................................................................................................................15

The Maxwell School of Citizenship and Public Affairs, *Maxwell School Poll: 2004-2007 Survey
   on Inequality and the American Public* .......................................................................15

**RULES**

Fed. R. Civ. P. 8(a)(1) ...............................................................................................................13

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................13

Federal Rule of Civil Procedure 12(b)(6).................................................................................13

Rule 12(b)(1) and (6), Fed. R. Civ. P. ........................................................................................1

**CONSTITUTIONAL PROVISIONS**

Art. I, § 4, cl. 1..........................................................................................................................9

## INTRODUCTION

The Plaintiffs bring this action under 28 U.S.C. § 2201 (declaratory judgments) and Rule 65, Fed. R. Civ. P. (injunctions). This Court is asked to declare President Biden's Executive Order 14019 to be unconstitutional and in violation of federal law. ECF 1. Plaintiffs have also filed a motion asking this Court to issue a preliminary injunction enjoining the defendant executive branch agencies from implementing EO 14019 and to preserve the status quo pending a final adjudication of the constitutionality and legality legitimacy of EO 14019. Defendants have not filed an answer to the Plaintiffs' complaint but responded with a motion to dismiss under Rules 12(b)(1) and (6), Fed. R. Civ. P., and Defendants also filed a memorandum opposing Plaintiffs' request for a preliminary injunction. ECF 56 and 57. Plaintiffs ask this Court to deny Defendant's motion to dismiss and to grant the preliminary injunction.

Defendants move to dismiss Plaintiffs' case in its entirety. Defendants argue under Rule 12(b)(1) that Plaintiffs lack standing and thus there is no jurisdiction. Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is governed by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). (As shown *infra* at p. 13 n.7, the standard for plaintiffs under Rule 12(b)(1) is quite relaxed compared to Rule 12(b)(6).)

In *Twombly*, the Court held that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly* at 556. At the pleadings stage, all that is required is a "plain statement [that] possess enough heft to sho[w] that the pleader is entitled to relief." *Id.* (internal citations omitted).[1]

---

[1] *Twombly* is not limited to the cases pleading a conspiracy under the antitrust laws under which *Twombly* arose: "Respondent first says that our decision in *Twombly* should be limited to pleadings made in the context of an antitrust dispute. This argument is not supported by *Twombly* and is incompatible with the Federal Rules of Civil Procedure. Our decision in *Twombly* expounded the pleading standard for all civil actions . . ." *Iqbal*, 556 U.S. at 684.

1

In *Iqbal* the Court clarified that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." 556 U.S. at 679. The Court held that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do' . . . [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 578 (quoting *Papasan v. Alain*, 478 U.S. 265, 286 (1986) and *Twombly,* 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly* 550 U.S. at 570 and 557 and *Papasan v. Alain*, 478 U.S. 265, 286 (1986). The Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiffs' complaint, with factual statements supported by sworn declarations and exhibits. easily satisfies the *Iqbal* and *Twombly* standard to survive Defendants' motion to dismiss. Plaintiffs complaint is not merely "an unadorned, the-defendant-unlawfully-harmed-me accusation" that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" nor does Plaintiffs' complaint simply "tender[] naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678.

We turn next to Defendants' opposition to a preliminary injunction. The relevant standard is found in the Eighth Circuit's decision in *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, (8th Cir. 1981), in which the court ruled:

> In sum, whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.* at 114.

2

"Probability of success on the merits" does not require proof that the party seeking a preliminary injunction prove there is a greater than fifty percent mathematical probability they will prevail on the merits:

> Some have read this element of the test to require in every case that the party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits. Under this view, even if the balance of the other three factors strongly favored the moving party, preliminary relief would be denied if the movant could not prove a mathematical probability of success at trial. Although this construction of the "probability of success" requirement is technically possible, we reject it.

*Id*. at 113.

Plaintiffs' complaint, and motion and memorandum in support of a preliminary injunction and those facts, declarations and exhibits Plaintiffs filed establish more than a reasonable "probability that movant will succeed on the merits." Defendants' lawyers argue about the factual record without filing an answer and Defendants fail to provide any declarations or exhibits that refute the factual statements and declarations the Plaintiffs have provided in support of the complaint for declaratory judgment and in support of a preliminary injunction.

Under the Supreme Court's and the Eighth Circuit's standards for this Court to evaluate Defendants' motion to dismiss and Defendants' opposition to a preliminary injunction, this Court should deny Defendants' motion to dismiss and grant a preliminary injunction enjoining the Defendant agencies from implementing EO 14019.

## ARGUMENT

## I.   This Court has jurisdiction, and the Plaintiffs have standing.

### A.   General Standing Requirements.

As in the other challenges to EO 14019 (*see Keefer v. Biden*, No. 1:24-CV-00147, 2024 WL 1285538 (M.D. Pa. Mar. 26, 2024) and *Am. First Pol'y Inst. v. Biden*, 2:24-cv-152-Z (N.D. Tex.), ECF No. 39), Defendants here assert lack of standing as a defense. To Defendants, it does

not matter if you are a taxpayer, a voter, a state, an election official, a secretary of state, a candidate for election, or anyone else—EO 14019 is unchallengeable. This cannot be.

To have standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At earlier stages of litigation, however, the manner and degree of evidence required to show standing is less than at later stages. *See Lujan v. Def's of Wildlife*, 504 U.S. 555, 561 (1992). "The Supreme Court also recognized that 'general factual allegations of injury resulting from the defendant's conduct may suffice' to demonstrate an injury in fact at the early pleading stage." *Tuter v. Freud Am., Inc.*, 4:22-CV-00282-RK, 2022 WL 4636225, at \*2 (W.D. Mo. Sept. 30, 2022) (quoting *Lujan* at 561). *See also Lujan*, 504 U.S. at 561 (A plaintiff's "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation omitted). Again, as discussed above, the factual allegations of injury necessary to establish standing at this motion to dismiss stage are based upon the allegations (and any supporting exhibits and declarations) presented in the complaint and these are presumed to be true. See discussion of *Iqbal* and *Twombly, supra*.

The Defendants here make a "lack of standing" argument similar to the argument the government made and lost in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547 (2016). In *Texas v. United States*, plaintiffs challenged Department of Homeland Security (DHS) actions that were not styled as any type of final agency action, did not regulate the plaintiff but instead had only downstream adverse effects, and concerned future injuries for which DHS claims the plaintiffs lacked specific data. *Id.* at 151-62.

4

Despite the fact that there were multiple steps between the defendant agency action and harm to Texas and despite the fact that the certainty and magnitude of the injury was not quantified, the court held the alleged injury to Texas was not too speculative or attenuated, nor did such a multi-link causal chain defeat traceability of the harm to the agency action. *See id.* at 156. Because the court could assume third parties would act in predictable ways, the Court rejected the government's argument that because the injury involved independent acts of third parties there was no standing. *Id.* at 160.[2]

**B. Defendants' implementation of EO 14019 is injuring Plaintiffs.**

**1. The actions EO 14019 directs the defendant federal agencies to take unlawfully consume state and local election officials' resources.**

Plaintiffs, election officials and the State itself, are "institutional plaintiff[s] asserting an institutional injury" to what they believe is their constitutional and statutory "power to regulate elections." *Texas v. United States*, 809 F.3d at 154 (citing *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 803 (2015)). For these plaintiffs, there are several injuries. One injury is the attendant monetary cost and resources due to increased registrations, though Plaintiffs here welcome registration of eligible individuals through the lawful and orderly process of registering eligible individuals to vote and providing eligible individuals who are lawfully registered to vote mail-in and absentee ballots when requested according to applicable state law, with trained professionals in traditional fashion. Even then, it is still a cognizable harm that is fairly traceable to an illegal agency action. *See Texas v. United States* at 157 ("[S]tates could offset almost any financial loss [caused by a defendant's action] by raising taxes or fees. The existence

---

[2] The Supreme Court also has noted that traceability can rest on "showing that third parties will likely react in predictable ways" to government action. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019). The evidence of past improper voter registration via a federal entity, for example, helps provide a historical record that federal voter registration activity imposes costs on state entities, which the Defendants do not contest constitutes an injury-in-fact. And, importantly, Defendants do not appear to dispute that EO 14019 in fact increased federal agencies' voter registration activities.

of that alternative does not mean they lack standing.").

Registrants and applications for mail-in ballots solicited by untrained federal employees and third-party non-government organizations (NGOs) may (1) provide false information, (2) deliberately leave parts of required forms blank, (3) leave them blank unintentionally or (4) be for an individual already registered resulting in duplicate registrations. See declaration of McDonald County clerk Kimberly Bell, Missouri Secretary of State Jay Ashcroft, and the statement of Alabama, Florida, Arkansas, Georgia, Idaho, Louisiana, Montana, Ohio, Tennessee, Wyoming, Indiana, Nebraska, Mississippi, South Dakota and West Virginia Secretaries of State. ECF 1-11 and 1-6 ("Involving Federal agencies in the registration process will produce duplicate registrations, confuse citizens, and complicate the jobs of our county clerks and election officials."). See also, March 6, 2024 letter of Mississippi Secretary of State, Watson. ECF 1-8.

Secretaries of State Ashcroft and Thurston, and the local election officials working under their direction will need to review and validate each of the new registrations generated by the defendant agencies and the third-party organizations as a result of EO 14019. Once local election officials validate voter registrations and mail-in ballot applications, the Secretary of State adds these records to the statewide voter roll. These election officials stand in the same situation as the sheriffs in *Printz v. U.S.*, 521 U.S. 898 (1997), who were unlawfully (according to the Supreme Court) required to conduct background checks on prospective handgun purchasers. *See also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements."). More work costs more money.

State and local election officials will be additionally burdened by the need to review the identification documents the agencies issue pursuant to EO 14019.3(a)(v). These documents are

6

not designated as acceptable identification documents under state law. Federal agencies issuing documents that purport to satisfy state voter identification requirements will require training to address these new identification documents EO 14019 directs federal agencies to issue.

Complying with EO's requirement would likely require publicly funded schools and colleges to spend money. For public schools and universities, those funds come from the state coffers, becoming a monetary injury to the States. The White House announced that the Department of Education would "remind educational institutions of their existing obligation and encourage institutions to identify further opportunities to assist eligible students with voter registration."[3] This is a reference to the Higher Education Act of 1965 (HEA), mandating that universities and colleges "make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make such forms widely available to students at the institution."[4] The Department of Education framed that mandate "remind[ing]" recipients "of the related Federal requirements association with … participation in the Federal student aid programs[.]" *Id.* States are at risk of losing revenue paid to these public education institutions should the State fail to fund and process the expenses necessary to process the applications EO 14019 directs federal agencies and NGO "partners" to solicit and submit.

It is difficult to quantify these injuries with a specific dollar figure. However, standing does not require converting these allegations "of harm into a specific dollar amount," but only that alleged compliance costs must be "more than de minimis." *Rest. L. Ctr. v. U.S. Dep't of Labor*, 66

---

[3] https://www.whitehouse.gov/briefing-room/statements-releases/2021/09/28/fact-sheet-biden-administration-promotes-voter-participation-with-new-agency-steps/

[4] https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2022-04-21/requirements-distribution-voter-registration-forms

F.4th 593, 600 (5th Cir. 2023); *see also Valente v. Larson*, 637 F.2d 562, 568 (8th Cir. 1981), *aff'd*, 456 U.S. 228 (1982) (burden of compliance must only be more than de minimis).

The Supreme Court has explained that "the cases themselves did not require a plea for compensatory damages as a condition for receiving nominal damages. Lord Holt spoke in categorical terms: '[E]very injury imports a damage,' so a plaintiff who proved a legal violation could always obtain some form of damages because he 'must of necessity have a means to vindicate and maintain [the right].'" *Ashby v. White*, 92 Eng. Rep. 126, 136-37 (1703). Justice Story's language was no less definitive: "The law tolerates no farther inquiry than whether there has been the violation of a right." *Webb v. Portland Manuf'g Co.*, 29 F. Cas. 506, 508 (C.C.D. Me. 1838). When a right is violated, that violation "imports damage in the nature of it" and "the party injured is entitled to a verdict for nominal damages." *Uzuegbunam v. Preczewski,* 592 U.S. 279, (2021).

The costs that the Plaintiffs have incurred and will continue to incur as a result of the defendant federal agencies' action, even if minor, are sufficient to constitute injury in fact. *Am. Farm Bureau Fed'n v. EPA*, 792 F.3d 281, 309 (3rd Cir. 2015) ("compliance costs" create "a classic injury-in-fact."); *United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) (recognizing $5 and $1.50 as injury-in-fact); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *McGowan v. Maryland,* 366 U.S. 420, 430-431 (1961) (finding that appellants fined $5 plus costs had standing). Plaintiffs thus suffer a cognizable injury from compliance costs, even modest costs.[5] *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130,

---

[5] Increased voter registration increases administrative costs. Federal law requires States and their political subdivisions to maintain records of voter registration. *See* 52 U.S.C. § 20701. And States must gather and provide the Election Assistance Commission information pertaining to voter registration in each State. *See* 11 C.F.R.

1142 (5th Cir. 2021). It is also legally cognizable harm for one to be forced "to modify one's behavior to avoid possible adverse consequences." *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)) (cleaned up).

### 2.    Executive Order 14019 unconstitutionally violates States' compelling interest in the integrity of elections.

In addition to the financial cost EO 14019 imposes upon state and local election officials, EO 14019 violates States' compelling constitutional interest in the integrity of elections. One Plaintiff is the State of Missouri, and two Plaintiffs are Secretaries of State responsible for elections in their respective States. The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). These States face a potential loss of federal funding unless they expend resources on complying with EO 14019.

States have an interest in election integrity. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters. Moreover, the interest in orderly administration and accurate recordkeeping provides a sufficient justification for carefully identifying all voters participating in the election process."). The get-out-the-vote registration and ballot harvesting scheme EO 14019 directs federal agencies and NGO "partners" to implement increases the risk and likelihood of ballots being cast in the name of fictional, ineligible and noncitizens. This is not a speculative supposition; it is occurring. *See, e.g.*, *Fish v. Kobach*, 304 F. Supp. 3d 1027, 1044 (D. Kan. 2018) (estimating that there were "1,265 noncitizens statewide

---

§ 9428.7. It follows that increasing voter registration makes it more difficult to maintain those records by virtue of the need to review, refresh, delete, audit, etc., those records.

who have registered or attempted to register to vote"); *State: More than 100 non-citizens have voted in Ohio*, Feb. 17, 2017, Dayton Daily News ("A total of 821 non-citizens have registered to vote in Ohio over the past five years—126 of whom actually cast ballots— Ohio Secretary of State Jon Husted announced today.").[6]

The States and their election officials have an interest in protecting public confidence in the integrity and legitimacy of representative government. Public confidence in the integrity of the electoral process encourages citizen participation in the democratic process. As the Carter–Baker Report observed, the "electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196-197 (2008); *see also Building Confidence in U.S. Elections* (Carter-Baker Report) § 2.5 (Sept. 2005) (quoted by the Court in *Crawford*, 553 U.S. at 193-94).

The Supreme Court in *Crawford* held,

> [o]ne strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry appropriate weight. Fraud can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome. Ensuring that every vote is cast freely, without intimidation or undue influence, is also a valid and important state interest. This interest helped to spur the adoption of what soon became standard practice in this country and in other democratic nations the world round: the use of private voting booths.

(citing *Burson v. Freeman*, 504 U.S. 191, 202–205 (1992) (plurality opinion)).

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (*per curiam*) (internal quotation marks omitted). Limiting the classes of persons who may handle early ballots to those less likely to have ulterior motives deters potential fraud and improves voter confidence. That was the view of the bipartisan Commission on Federal Election Reform chaired by former President Jimmy Carter and

---

[6] https://www.daytondailynews.com/news/state-more-than-100-non-citizens-have-voted-ohio/kLDaZOPtJBvlx1JNEWt1DJ/

former Secretary of State James Baker. The Carter-Baker Commission noted that "[a]bsentee balloting is vulnerable to abuse in several ways: . . . Citizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, overt and subtle, or to intimidation." *Report of the Comm'n on Fed. Election Reform, Building Confidence in U.S. Elections* 46 (Sept. 2005) (The Carter-Baker Commission). The State's interest in the need to maintain a current accurate voter roll that includes only the names of citizens eligible to cast a ballot and to assure that the ballots actually cast and counted are those cast by citizens eligible to cast a ballot is a compelling interest. The implementation of EO 14019 will undermine this interest and the Plaintiffs' ability to responsibly oversee fair, just, and honest elections.

### 3.   Plaintiffs need only show likely injury, not "but-for" causation, to establish standing.

The defendant federal agencies' actions implementing EO 14019 need not be the "but-for" cause, or the proximate cause, of injury to Plaintiffs for Plaintiffs to have standing to challenge EO 14019. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). "In order to be fairly traceable, the defendant's actions must contribute to the injury, but they do not have to be the sole cause of the injury." *Sierra Club, Lone Star Ch. v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996) ("Given the number of entities discharging chemicals into Galveston Bay, it would be virtually impossible for any of Sierra Club's members to trace his injuries to Cedar Point's discharge in particular. Rather, it is sufficient for Sierra Club to show that Cedar Point's discharge of produced water *contributes* to the pollution that impairs Douglas's use of the bay.") (emphasis in original). This is thus a typical suit in which an "unregulated plaintiff … challenge[s] an allegedly unlawful agency [action] that regulates others but also has adverse downstream effects on the plaintiff." *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 144 S. Ct. 2440, 2460 (2024) (Kavanaugh, J., concurring).

For purposes of determining standing and causation, courts can assume that third parties will act in predictable ways. Here, Plaintiffs' "theory of standing … does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *U.S. Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *see also Am. Farm Bureau*, 792 F.3d at 293 (standing to challenge rule where "even if the [rule] does not cause injury by itself, it will give way to requirements," which will "cause compliance costs for [the plaintiff], a classic injury-in-fact"). Defendants' actions here contribute to Plaintiffs' injuries. For election administrators, they contribute to an increase in administrative burden and consuming taxpayer resources. For States, they undermine election supervision and contribute to a threat of loss of federal funding. EO 14019's agency actions will thus contribute to Plaintiffs' injuries, which is sufficient to confer standing to challenge those actions.

Finally, states are entitled to "special solicitude" in standing analysis. The supreme Court has recognized that states are "not normal litigants" and are "entitled to special solicitude in [] standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. 497, 518-20 (2007). "When special solicitude is appropriate, a state can establish standing 'without meeting all the normal standards for redressability and immediacy.'" *Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022) (quoting *Massachusetts*, 549 U.S. at 517-18). Standing will thus exist "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* The State of Missouri's claims are cognizable under traditional Article III rules, as described above, but standing is even more clear under the Supreme Court's relaxed rules for states.

**C.**    **Plaintiffs have satisfied the standards necessary to establish their standing to challenge EO 14019.**

The specific acts injuring Plaintiffs are traceable to the Defendant's implementation of EO 14019. This point is plead and established in Plaintiff's complaint and supporting exhibits and declarations. The Defendants have provided no answer to the Plaintiffs' complaint nor have Defendants provided any declarations or basis to contest the factual allegations the Plaintiffs have made, which factual allegations at this preliminary motion to dismiss stage of this litigation must be assumed to be true. Plaintiffs have established that enjoining Defendants from continuing to engage in further acts implementing EO 14019 will therefore redress those injuries, at least in part. While not "full redress," such an order from this Court would "effectuate a partial remedy" that satisfies redressability.

As discussed above in *Iqbal* and *Twombly*, to survive a 12(b)(1) and 12(b)(6)[7] motion to dismiss, the Plaintiffs' allegations of an injury need only be sufficient to allow this case to proceed to discovery.

---

[7] The government's claim (ECF 58 at 9) that the 12(b)(1) and 12(b)(6) standards under a motion to dismiss are similar is incorrect. This case summarizes the law in the Eighth Circuit about pleading standing:

"The standing inquiry is merely a threshold inquiry"; it does not present the "higher hurdles" of pleading a claim to relief on the merits under Federal Rule of Civil Procedure 12(b)(6). *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). Pleading jurisdiction requires only "a short and plain statement of the grounds for the court's jurisdiction," while pleading the merits requires not just "a short and plain statement of the claim," but one that "show[s] that the pleader is entitled to relief." *Compare* Fed. R. Civ. P. 8(a)(2), *with* Fed. R. Civ. P. 8(a)(1). Thus, pleading Article III standing requires only "general allegations of injury, causation, and redressability." *In re SuperValu, Inc.*, 870 F.3d 763, 769, 773 (8th Cir. 2017) (internal quotation marks omitted). This court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* As alleged in the complaint, the residents are "taxpayers of ... the School District." Unlike Anoka County taxpayers residing outside the school district, the residents thus belong to a particular "taxpayer base" consisting of school-district residents with a special "interest in the funds allocated to" the school district. *See Booth v. Hvass*, 302 F.3d 849, 853 (8th Cir. 2002).

*Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811-12 (8th Cir. 2022) (per curiam).

13

II. **Plaintiffs are likely to prevail on the merits of their challenge to Executive Order 14019.**

A. **Defendants mischaracterize the partisan intention and effect of EO 14019.**

The Defendants mischaracterize the partisan intent, purpose and effect of EO 14019 as well as the nature of the action EO 14019 directs agencies to take. The Defendants state, "the Order merely directs agencies to consider how they may attempt to provide accurate nonpartisan information about voting and assist voters 'in completing voter registration and vote-by-mail application[s] forms in a manner consistent with all relevant State laws.'" ECF 58 at 17 (citing EO 14019.3. Defendants alternately describe EO 14019 as nothing more than a direction that executive agencies engage in a confidential session of "brainstorm[ing]." ECF 58 at 1. Defendants characterization of EO 14019 as an executive agency confidential deliberation subject to Presidential Privilege is just wrong. In essence, Defendants' argue that "there is nothing to see here" or, if there is, it is just the agencies engaged in implementing the National Voter Registration Act for which the executive branch agencies action is exempt from the APA.

Defendants are fond of sprinkling the word "nonpartisan" throughout their brief. In truth, both the origin, intention and purpose of EO 14019 is partisan and the implementation of EO 14019 is designed and intended by the left-wing DEMOS organization to benefit President Biden and Vice President Harris and the Democrat Party.[8] Executive Order 14019 is designed and intended to increase the number of ballots cast by the Democrat Party's core constituencies, especially in urban communities where Democrat voter registration is substantially greater than Republican registration. After presenting the voter registration and ballot harvesting scheme with the Biden Administration, two key leaders of the organization were hired by the White House in roles where

---

[8] *Executive Action to Advance Democracy: What the Biden Harris Administration and the Agencies Can Do to Build a More Inclusive Democracy*, Demos (Dec. 3, 2020), bit.ly/48vxP2a; *Demos Applauds Biden's Executive Order Aimed at Facilitating Voter Registration, Urges Strong Follow-Through*, Demos (March 7, 2021), bit.ly/49InIbd.

14

they could assist in its execution.[9]  See, ECF 1-3 and Heritage Foundation Memorandum May1, 2024 and DEMOS publication ECF 1-10.  The Heritage Foundation Memorandum and exhibits is also included as an exhibit to Plaintiffs' memorandum in support of preliminary injunction. ECF 51-4. A more legible copy of the memorandum is attached as **Exhibit 1** hereto.

Defendants' do not refute this point nor do Defendants provide any contrary declarations. Rather Defendants' lawyers simply refer to EO 14019 as "nonpartisan" throughout their pleadings. But calling a get-out-the-vote scheme "nonpartisan" does not make the scheme nonpartisan.  And the record before this Court demonstrates, both in intention, design and effect, that EO 14019 is a highly partisan plan.

Furthermore, once adopted, the Biden-Harris Administration and the defendant executive branch agencies have gone to extensive lengths to stonewall attempts of members of Congress and private organizations to obtain information on how and by whom the EO is being implemented.[10] But details have slowly trickled out. The Foundation for Government Accountability has discovered that the agencies implementing EO 14019 are targeting voters receiving government welfare services and benefits, the same group of voters that have historically voted overwhelmingly Democrat.[11]

---

[9] Stewart Whitson, *Biden's Unlawful Plan to Federalize Elections*, The American Spectator (Oct. 22, 2021), bit.ly/3OTS1Up.

[10] *See, e.g.*, *Budd, Hagerty, Colleagues Renew Demand for Transparency on Taxpayer-Funded Voter Mobilization*, Off. of U.S. Sen. Ted Budd (2023), bit.ly/42PQnZQ; *see also The Found. For Gov't Accountability v. United States*, 2:22-cv-252 (M.D. Fla.).

[11] *See, e.g.*, Rich Morin, *The Politics and Demographics of Food Stamp Recipients*, Pew Research Center (July 12, 2013), pewrsr.ch/42M6HKW; *see also* The Maxwell School of Citizenship and Public Affairs, *Maxwell School Poll: 2004-2007 Survey on Inequality and the American Public*, Roper iPoll, bit.ly/3UO7gCj; *see also Long-Term Unemployed Survey*, Kaiser Family Foundation/NPR (Dec. 2011), n.pr/49o1ziH.

**B.    Executive Order 14019 violates the Separation of Powers.**

Defendants characterize EO 14019 as an "exercise [of President's Biden's 'general administrative control' to oversee how agency officials carry out their statutory responsibilities." ECF 58 at 15. Defendants fail to answer the question of "what *statutory responsibilities*" does EO 14019 direct the Defendant agencies to carry out? For example, what "statutory" provision of any law passed by Congress vests the Environmental Protection Agency or Homeland Security Administration or the Energy Department with the responsibility of registering voters and encouraging third party NGOs to increase mail-in voting? Defendants do not tell us. In truth, there is no such statute directing, authorizing or funding the defendant agencies' effort to engage in the get-out-the-vote scheme EO 14019 directs in concert with NGO "partners."

Defendants proceed to state that "the President issued [EO 14019] because he wished agencies to consider what nonpartisan actions they could take consistent with the various statutory mandates and the general goals of the NVRA." ECF 58 at 15. There are two significant problems with this line of argument. First, the NVRA contains no "mandate" that executive agencies engage in those activities directed by EO 14019. Second, Defendants reference to the NVRA as justification of EO 14019 makes exactly Plaintiffs' point that EO 14019 is not authorized by Congress or a statute passed by Congress. Similarly, Defendants references to the responsibilities of the Department of Defense and the State Department to protect voting rights in their respective areas (ECF 58 at 23) prove Plaintiffs' point, in that those responsibilities were mandated by Congressional statutes, not executive orders. Indeed, statutes passed by Congress, including the Hatch Act and NVRA, forbid, not direct, the partisan get-out-the-vote scheme EO 14019 directs executive agencies to undertake.

Section 2 of EO 14019 says "[i]t is the responsibility of the Federal Government to expand access to, and education about, voter registration and election information, and to combat

16

misinformation, in order to enable all eligible Americans to participate in our democracy." That is a substantive directive to agencies that is logically construed as altering, at least in part, their missions. Federal agencies' missions are whatever their organic statutes say; it is not voter registration.

Defendants are wrong to argue that Congress "mandated" in the NVRA that executive branch agencies engage in that action directed by EO 14019. Executive Order 14019 actually directs the defendant agencies to engage in activity contrary to the Hatch Act. That Dog won't Hunt.

Executive Order 14019 violates the Administrative Procedure Act (APA). Final agency actions mark "the consummation of the agency's decision-making process … by which rights or obligations have been determined, or from which legal consequences will flow," a test applied with a "flexible" and "pragmatic approach" when finding finality. *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). Each final action need not be:

> the culmination of lengthy administrative proceedings. It need only be an agency decision which imposes an obligation, denies a right, or fixes some legal relationship. If [it] … has a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and envisions immediate compliance with its terms, the order has sufficient finality …. [T]he consequences [must be] sufficiently concrete and definite to warrant review.

> *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991).

Final actions come in various forms. They "may result from a series of agency pronouncements rather than a single edict." *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48–49 (D.C. Cir. 2000) (cleaned up). "[S]keletal" agency explanations can be final with "accompanying explanatory correspondence." *Alaska Dep't of Env't Conservation v. EPA,* 540 U.S. 461, 497 (2004). Cases interpret "final agency action" expansively, including the decision to add a question to a government form*, Dep't of Commerce v. New York,* 588 U.S. 752, 767 (2019),

17

policy statements, guidance documents, and enforcement discretion documents, see *Texas v. Biden*, 10 F.4th 538, 550 (5th Cir. 2021); *Texas v. EEOC,* 933 F.3d at 443; *Texas v. United States*, 809 F.3d at 172–73. Final action can also be indirect regulation, such as language to federal funding recipients from which they could infer that disagreement would jeopardize funding. *See, e.g., Frozen Foods Express v. United States*, 351 U.S. 40, 44-45 (1956); *see also Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002). Courts thus do not elevate form over substance. *See, e.g., Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.9 (D.C. Cir. 1986).[12]

Many of the implementing actions directed in EO 14019 are described in Plaintiffs' memorandum in support of a preliminary injunction. These actions are final agency actions under the APA, subject to judicial review. Those actions have a substantial impact on private interests, directly or indirectly imposing obligations on those receiving these directions and instructions, modifying the legal rights (*i.e.,* to vote) of the persons agencies deal with directly or through instrumentalities (like colleges), from which legal consequences flow. These are discrete acts of attempting to register voters and engage in a get-out-the-vote scheme. They are the specific acts enumerated in the complaint and memorandum in support of a preliminary injunction, plus whatever undisclosed acts of a similar nature Defendants are unlawfully concealing from Congress and the public. And yes, Plaintiffs do indeed seek to enjoin, and later vacate, every final agency action implementing EO 14019.

### C.    Executive Order 14019 violates principles of federalism.

President Biden intended Executive Order 14019 to accomplish what Congress did *not* do by the normal lawmaking process. *See, e.g.*, H.R.1, 117th Cong. (2021). The purpose of EO 14019 is to do what President Biden said was the federal government's "duty to ensure that registering to

---

[12] Contra ECF 58 at 28 (citing D.C. Circuit case that is inapposite because no funding was at issue).

vote and the act of voting be made simple and easy for all those eligible to do so." EO 14019 § 1.

President Biden and the Biden-Harris Administration decided that is not the State's responsibility

but rather, "[i]t is the responsibility of the Federal Government to expand access to, and education

about, voter registration and election information, and to combat misinformation, in order to enable

all eligible Americans to participate in our democracy." EO 14019 § 2.  That statement undermines

the assertion that EO 14019 "shall be implemented consistent with applicable law and subject to

the availability of appropriations."

Section 3 of EO 14019 implements the Order's purpose and policy by directing federal

agencies and departments, including those named here, to "consider ways to expand citizens'

opportunities to register to vote and to obtain information about, and participate in, the electoral

process." Section 3(a) directs that "[t]he head of each agency shall evaluate ways in which the

agency can, as appropriate and consistent with applicable law, promote voter registration and voter

participation" by considering "ways to provide relevant information in the course of activities or

services that directly engage with the public . . . about how to register to vote, how to request a

vote-by-mail ballot, and how to cast a ballot in upcoming elections." And EO 14019 directs the

Defendant agencies to partner with third-party non-government entities to submit voter

registrations and absentee ballot requests and harvest mail-in ballots, EO 14019.3(iii)(C), and to

register incarcerated prisoners to vote and cast ballots. See Sec. 9, "Ensuring Access to Voter

Registration for Eligible Individuals in Federal Custody."

Congress has not authorized any of the activity EO 14019 directs federal agencies to take

and EO 14019 trespasses upon the constitutional authority and role of the States in regulating and

administering the conduct of elections provided in the Elections Clause and Electors Clause of the

Constitution. Executive Order 14019 violates the Elections Clause, Electors Clause of the

19

Constitution, Article I § 1, cl. 1 and 2, which preserves in the States the primary authority to regulate and conduct federal elections. See, *Trump v. United States*, 603 U.S. ___, 144 S. Ct. 2312 (2024) and discussion in Memorandum in Support ECF 51 at 8-14 and 16 – 17.

**III.    A preliminary injunction against Defendants from implementing EO 14019 is necessary to prevent Plaintiffs from being irreparably harmed.**

The harms Plaintiffs complain of are irreparable. They are imminent and cannot be compensated by damages. What's more, when fundamental constitutional rights are involved, courts frequently *presume* irreparable harm. *See, e.g., Elrod v. Burns*, 427 U.S. 347 (1976).

**A.    A preliminary injunction is the proper remedy to prevent irreputable harm.**

The purpose of the preliminary injunction is to preserve the status quo as it existed before the Defendants began to implement EO 14019. Defendants argue that election rules should not be changed on the eve of an election. ECF 58 at p. 31, *citing Republican Nat'l. Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423,424 (2020) and *Purcell v. Gonzalez*, 549 U.S. 1 (2006).

We agree. But the Defendants fail to appreciate that this consideration argues *in favor of* this Court granting the injunction. It is EO 14019 that seeks to change the status quo of how states administer elections. As noted in Plaintiffs' opening memorandum, EO 14019 directs agencies to issue identification that purportedly satisfies states voter identification requirements. But the states already have established voter identification laws and regulations. *Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 605 (4th Cir. 2016). State and local election officials have been trained to uniformly apply and administer these voter identification requirements - in both the processing of mail-in ballots and in-person early voting and election day voting. Federal agencies issuing new and novel documents that purportedly satisfy the States' voter identification requirements will create confusion and lead to the unequal administration of the election. See letters of Secretary of

State and declarations of Secretary of State Ashcroft and McDonald County Clerk Kimberly Bell. ECF 1-6, 1-11 and 51-9.

  **B. The Defendants' objection to when the Plaintiffs filed this action and sought an injunction is no reason why a preliminary injunction should not be granted.**

  The Defendants' complaint that the Plaintiffs waited too long to file this action or seek a preliminary injunction is without merit. ECF 58 at 29. The timing of Plaintiffs' suit and preliminary injunction motion is not a problem here. A "long delay" in seeking relief might undermine a request for an injunction, 11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. & PROC. § 2948.1, but only "[a]bsent a good explanation." *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 584 (N.D. Tex. 2022), opinion clarified, No. 4:22-CV-00691-O, 2022 WL 6081194 (N.D. Tex. Sept. 26, 2022). One reason for excusable delay is when Plaintiffs are investigating facts to accumulate evidence. *See, e.g.*, *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir. 2000). And a two-month delay is not a longer delay than has been recognized as acceptable. *VanDerStok*, 625 F. Supp. 3d at. 585. That is precisely what happened here. Plaintiffs have been diligent in seeking this evidence, and continue to do so.

  An adverse evidentiary inference is warranted here, similar to spoliation. Defendants assert the "presidential communications privilege," Doc. 58 at 7, but do not explain why it applies to these facts. Defendants' assertion is specious. This Court should respond to their failure to justify withholding information from compulsory production by drawing a negative inference that the withheld documents would support Plaintiffs' claims, including their request for a preliminary injunction. Defendants cannot withhold relevant information and then charge Plaintiffs with unreasonable delay for being reasonable enough to seek that information and wait for it prior to filing suit and seeking a preliminary injunction.

Such an adverse inference may be drawn from a party's refusal to testify or provide information, even when that refusal did not occur in the course of the litigation in which the opposing party asks that an adverse inference be drawn. *See Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 209–10 (5th Cir. 1983) (adverse inference could be drawn against litigant based on his "failure to cooperate with the fire marshal's investigation"). In fact, one circuit specifically held, in a case where a party sought an injunction pending appeal, that it was "appropriate to draw adverse inferences" in that civil proceeding because when a congressional "Committee sought to question her about [certain] activities, she invoked the Fifth Amendment and refused to answer." *Ward v. Thompson*, No. 22-16473, 2022 WL 14955000, at *2 (9th Cir. Oct. 22, 2022).

Defendants cite cases regarding various lengths of delay (Doc. 58 at 29) but they are unavailing. *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (court noting there had been no suggestion that these delays were attributable to Tough Traveler's pursuit of further investigation of the alleged infringement); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (court noting that plaintiff had had full knowledge of the trademark infringement from the beginning); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1192 (5th Cir. 1975) (measures to shortcut NLRB process should be "sparingly employed"); *AARP v. U.S. Equal Emp. Opportunity Comm'n*, 226 F. Supp. 3d 7, 22 (D.D.C. 2016) (AARP's unexplained delay in bringing this suit found to weigh against finding of irreparable harm, although not dispositive); *Symetra Life Ins. Co. v. Rapid Settlements Ltd.,* 612 F. Supp. 2d 759, 774 (S.D. Tex. 2007) (delay mattering "absent a good explanation").

In the Eighth Circuit, delay can be a factor in determining irreparable harm, but it is not automatically dispositive. In *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931 (8th Cir. 2002), the

court acknowledged the delay but still found sufficient grounds for granting a preliminary injunction due to the substantial likelihood of success on the merits and the balance of harms.

### C.    The injunction should be immediate.

Even though some harm has been suffered by the Plaintiffs, the additional harm from the agencies continuing to implement EO 14019 requires an injunction. The fact that the Defendants got away with some implementation does not eliminate the need for an injunction. Note also that the harm is not just the states and local election officials having to process more voter registration applications (as the Defendants argue) but is rather the need to process ineligible and duplicate voter registrations, to vet and process ineligible absentee and mail-in ballot requests to maintain an accurate voter roll, and also the need to process the mail-in ballots that the Defendant agencies submit and that third-party NGOs submit pursuant to the EO 14019 get-out-the-vote scheme. *See* Declaration of Kimberly Bell, Ex. 10 to Complaint (citing the additional work caused by EO 14019). This injury does not cease on the day voter registration closes. Furthermore, many states have same day voter registration. And, as explained below in the discussion of the need for an injunction that is national in scope, EO 14019 will continue to cause harm to the Plaintiffs through and after election day, 2024.

### D.    The injunction should be national in scope.

As Plaintiffs stated in their opening brief (ECF 51), the Equal Protection Clause requires the election be conducted in a uniform and equal manner. *See Bush v. Gore*, 531 U.S. 98 (2000). This means the injunction should be nationwide in scope, because otherwise full relief is not granted to plaintiffs. In such cases, the Eighth Circuit has granted nationwide injunctions. *See, e.g., Nebraska v. Biden,* 52 F.4th 1044 (8th Cir. 2022) (student loan case), *aff'd, Biden v. Nebraska*, 143 S. Ct. 2355 (2023). *Cf. Missouri v. Biden,* 2024 WL 3104514 (E.D. Mo. 2024), *aff'd,* 112

23

F.4th 531 (8th Cir.2024) and *Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019), *rehearing en banc denied*, 953 F.3d 517 (2020).

## CONCLUSION

Executive Order 14019 is an unconstitutional and unlawful effort to use federal taxpayer funds and enlist the federal government's resources and employees to partnership with third-party organizations in a partisan effort to get-out-the-vote and influence the outcome of elections including the Presidential Election of November 5 as well as future federal elections. This Court should issue a preliminary injunction preserving the status quo and enjoin the Defendant executive branch agencies from implementing EO 14019. Accordingly, this Court should deny the Defendants' motion to dismiss under Rule 12(b)(1) and (6) and should grant the preliminary injunction the Plaintiffs have requested.

Respectfully submitted this 15th day of October, 2024.

*/s/ Mark F. (Thor) Hearne, II*
MARK F. (THOR) HEARNE, II
*True North Law, LLC*
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 296-4000
thor@truenorthlawgroup.com

Attorney of Record for Jay Ashcroft,
John Thurston, Kimberly Bell, and Kurt Bahr

*/s/ Jay Ashcroft*
Secretary of State Jay Ashcroft
(pro hac vice application pending)

*/s/ Frank Jung*
Frank Jung, General Counsel
(pro hac vice application pending)
600 W. Main
Jefferson City, MO 65101

*/s/ James S. Atkins*
JAMES S. ADKINS
ANDREW BAILEY
*Office of the Attorney General of Missouri -*
*Jefferson City*
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102-0899
(573) 751-7890
jay.atkins@ago.mo.gov

Attorneys of Record for State of Missouri

*/s/ Jeremiah J. Morgan*
JEREMIAH J. MORGAN

*/s/ D. Scott Lucy*
D. SCOTT LUCY

24

**Certificate of Service**

The undersigned hereby certifies that the foregoing document was served on all registered parties on this 15th day of October, 2024, using the Court's online filing system.

/s/ *Mark F. (Thor) Hearne II*