UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAY ASHCROFT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-01062-SEP |
| | ) |
| JOSEPH BIDEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Preliminary Injunction, Doc. [48]. The motion has been fully briefed and argued. For the reasons set forth below, the motion is denied.

### FACTS AND BACKGROUND

On March 7, 2021, United States President Joseph R. Biden signed Executive Order 14019 ("the EO"). The EO provides, in relevant part, that "[t]he head of each agency shall evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation . . . [,] includ[ing] consideration of:"

> (i) ways to provide relevant information in the course of activities or services that directly engage with the public—including through agency materials, websites, online forms, social media platforms, and other points of public access—about how to register to vote, how to request a vote-by-mail ballot, and how to cast a ballot in upcoming elections;
>
> (ii) ways to facilitate seamless transition from agencies' websites directly to State online voter registration systems or appropriate Federal websites, such as Vote.gov;
>
> (iii) ways to provide access to voter registration services and vote-by-mail ballot applications in the course of activities or services that directly engage with the public, including:
>
>> A. distributing voter registration and vote-by-mail ballot application forms, and providing access to applicable State online systems for individuals who can take advantage of those systems;
>>
>> B. assisting applicants in completing voter registration and vote-by-mail ballot application forms in a manner consistent with all relevant State laws; and
>>
>> C. soliciting and facilitating approved, nonpartisan third-party organizations and State officials to provide voter registration services on agency premises;

>   (iv) ways to promote and expand access to multilingual voter registration and election information, and to promote equal participation in the electoral process for all eligible citizens of all backgrounds; and
>
>   (v) whether, consistent with applicable law, any identity documents issued by the agency to members of the public can be issued in a form that satisfies State voter identification laws.

Executive Order 14019, *Promoting Access to Voting*, 86 Fed. Reg. 13,623 (Mar. 7, 2021).

On July 31, 2024, Plaintiffs filed this lawsuit.[1] *See* Doc. [1]. They argue that the EO "violates the Separation of Powers, the Elections Clause, the Tenth Amendment, and federalism by directing executive branch agencies to engage in election activity reserved to the States." Doc. [51] at 9. They also maintain that the EO "violates federal law by directing federal agencies and federal employees to violate the Hatch Act, and the agencies implementing EO 14019 are doing so without complying with the Administrative Procedure Act." *Id*.

Plaintiffs include the State of Missouri ex rel. Andrew Bailey, Missouri's Attorney General; John Robert "Jay" Ashcroft in his official capacity as Missouri's Secretary of State; John Thurston in his official capacity as Arkansas's Secretary of State; Kurt Bahr in his official capacity as Director of Elections for St. Charles County, Missouri; and Kimberly Bell in her official capacity as the County Clerk for McDonald County, Missouri.

On September 25, 2024, Plaintiffs filed a motion seeking a preliminary injunction. *See* Doc. [48]. Specifically, they ask the Court to "preserve the status quo by issuing a preliminary order enjoining President Biden and the executive branch agencies from implementing EO 14019 or taking any action or spending any funds directed by EO 14019." Doc. [51] at 34. Defendants responded, and Plaintiffs replied. *See* Docs. [58], [63]. The Court heard oral argument on October 28, 2024. This Order follows.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish four factors showing such relief is warranted: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *Morehouse Enter., LLC v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 78 F.4th 1011, 1016 (8th Cir. 2023) (quoting *MPAY Inc. v. Erie*

---

[1] On October 1, 2024, the Court granted Plaintiffs' motion to consolidate Case No. 4:24-cv-01063 with Case No. 4:24-cv-01062.

2

*Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020)).  The third and fourth factors "merge when the Government is the party opposing the preliminary injunction." *Id*. at 1018 (citing *Nken v. Holder*, 566 U.S. 418, 435 (2009)).  Plaintiffs "bear[ ] the burden of demonstrating the preliminary injunction is warranted because a preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Id*. at 1016 (citing *Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022)).

As a threshold matter, "[e]ach plaintiff must establish standing for each form of relief sought." *Miller v. Thurston*, 967 F.3d 727, 734 (8th Cir. 2020).  Plaintiffs "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  At the preliminary injunction stage, Plaintiffs are required to make a "clear showing" that they are "'likely' to establish each element of standing." *Id*. (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "When considering standing at the preliminary injunction stage, [the Court] assume[s] the complaint's allegations are true and view[s] them in the light most favorable to the plaintiffs." *GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024) (citing *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022)).

To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).  "An injury in fact must be 'concrete,' meaning that it must be real and not abstract." *Id*. at 381 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)).  The injury must be particularized, meaning it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *Id*. (citing *Lujan*, 504 U.S. at 560 n.1).  And finally, "the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id*. (citing *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)).

The causation element requires Plaintiff to "establish that the plaintiff 's injury likely was caused or likely will be caused by the defendant's conduct." *Id*. at 382.  The line of causation "must not be too speculative or too attenuated," *id*. at 383, and Plaintiffs "cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Id*.

3

(quoting *Clapper*, 568 U.S. at 415 n.5).  "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements."  *Id*. at 382.  "But in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending[, a]nd when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State's claim for standing can become more attenuated."  *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023).

Finally, Plaintiff's injury must be redressable.  As the Supreme Court has observed, causation and redressability "are often 'flip sides of the same coin.'"  *All. for Hippocratic Med.*, 602 U.S. at 380 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)).  So, it is often the case that "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."  *Id*. at 381.

## DISCUSSION

Plaintiffs advance two bases for Article III standing.[2]  They allege that the EO "imposes unreimbursed costs and expenses upon States and local election officials."  Doc. [1] ¶ 75.  And they allege that the implementation of the EO undermines Plaintiffs' compelling interest in "assuring that elections are conducted in a fair, honest, and orderly manner that inspires public confidence in the integrity of the outcome."  Doc. [1] ¶¶ 69-74.  The Court addresses each theory in turn.

According to Plaintiffs, "EO 14019 requires that state personnel and local election officials [ ] spend state funds and resources in response to the EO 14019 get-out-the-vote mail-in voting scheme."  *Id*. ¶ 75.  Missouri local election officials and county clerks "have to review and process each new registration obtained by the defendant agencies pursuant to EO 14019."  *Id*. ¶ 78.  Plaintiffs allege that many of the voter registration forms and mail-in ballot applications issued pursuant to the EO are "duplicates, ineligible, or in the name of illegal migrants," which

---

[2] Plaintiffs assert a third basis for standing for the first time in their reply:  "Complying with EO's requirement *would likely require* publicly funded schools and colleges to spend money."  Doc. [63] at 16 (emphasis added).  According to Plaintiff, "[t]he White House announced that the Department of Education would 'remind educational institutions of their existing obligation [under the Higher Education Act] and encourage institutions to identify further opportunities to assist eligible students with voter registration."  *Id*.  But Plaintiffs allege no specifics about how the EO has caused, or will cause, educational institutions to incur new or additional costs, leaving that basis for standing as speculative as the other two.

4

imposes "a significant expense and burden upon state and local election officials that must review and vet the eligibility of these documents." *Id*. ¶ 76.  Plaintiffs also allege that "[n]ovel forms of documents issued by federal agencies pursuant to EO 14019 will be confusing to local election officials and make the administration of elections more difficult and less uniform." *Id*. ¶ 43.  As Missouri's Secretary of State, Plaintiff Ashcroft must "reimburse local election officials when they enter, or record voter registrations or changes to existing voter registrations submitted by the defendant agencies or third-party organizations pursuant to EO 14019." *Id*. ¶ 76.

Accepting those allegations as true and viewing them in the light most favorable to Plaintiffs, they do not amount to a "clear showing" that Plaintiffs are "likely" to meet each element of Article III standing.  *Murthy*, 144 S. Ct. at 1986.  Although President Biden signed the EO in March 2021, as of September 2024, Plaintiffs have produced only nonspecific and speculative allegations of increased compliance costs.  They do not specifically allege a measurable increase in voter registrations overall, or in attempted registrations by ineligible persons, since promulgation of the EO.  They do not even specifically allege an increase in compliance costs to the Plaintiff States.

When asked at oral argument to speak to Plaintiffs' injury-in-fact, counsel pointed to the declarations of Secretary of State Ashcroft and County Clerk Kimberly Bell, which state in relevant part:

- "[I]nvolving Federal agencies in the voter registration process *will* produce duplicate registrations, confuse citizens and complicate the duties of county clerks and election officials."  Docs. [51-9] ¶ 3 (Ashcroft) (emphasis added); [51-10] ¶ 3 (Bell) (emphasis added).

- State and local election officials "have to review and process each new registration obtained by the defendant agencies pursuant to EO 14019."  Docs. [51-9] ¶ 4 (Ashcroft); [51-10] ¶ 5 (Bell).

- State and local elections officials "*are also going to have* to address whatever identification requirements the agencies arrive at pursuant to their latitude under EO 14019.3(a)(v). This *will require* training and other burdensome activities solely as a result [of] EO 14019."  Docs. [51-9] ¶ 5 (Ashcroft) (emphasis added); [51-10] ¶ 6 (Bell) (emphasis added).

- "State and local election officials *will be forced* to bear the expenses caused by EO 14019 and to pay for these costs from state and local revenue."  Docs. [51-9] ¶ 7 (Ashcroft) (emphasis added); [51-10] ¶ 8 (Bell) (emphasis added).

5

- "Further, the implementation of EO 14019 *will make* the training of local election officials such as poll workers and election judges more difficult and costly." Docs. [51-9] ¶ 8 (Ashcroft) (emphasis added); [51-10] ¶ 9 (Bell) (emphasis added).
- "One individual, an immigrant who had not yet been naturalized and was not yet a citizen, came to my office to be removed from the McDonald County voter roll. He was concerned that being on a voter roll would be viewed as illegal and would keep him from obtaining citizenship. This individual's voter registration form was not filled out by him, but by someone at a social services office." Doc. [51-10] ¶ 4 (Bell).

Ashcroft and Bell's declarations do not clearly show that Plaintiffs are likely to establish an injury that is "concrete" and "actual or imminent, not speculative." *See All. for Hippocratic Med.,* 602 U.S. at 381. They predict, rather than allege, increased costs, and they provide nothing specific or concrete to support those predictions.

Plaintiffs also do not clearly show that they are likely to be able to draw a causal connection between any action taken pursuant to the EO and an increase in costs. While Bell does relate a single incident in which an ineligible individual sought to be removed from the voter rolls, she does not allege a link between that incident and the EO. At oral argument, Plaintiffs' counsel proffered that Bell believed the incident to be the result of the EO, but (a) that allegation appears nowhere in the Complaint or any other filing, and (b) counsel also conceded that federal agencies may have been engaged in activities promoting voter registration before promulgation of the EO, which prevents the Court from inferring even a likelihood of causation from Bell's single anecdote. At most, Bell's declaration supports a *possibility* that the EO caused a single improper voter registration, which is a far cry from a "clear showing" that Plaintiffs could "likely" establish causation.[3] *Murthy,* 144 S. Ct. at 1986.

Plaintiffs' second standing theory is that the EO undermines the "compelling constitutional interest in assuring that elections are conducted in a fair, honest, and orderly manner that inspires public confidence in the integrity of the outcome." Doc. [1] ¶¶ 69-74. At oral argument, Plaintiffs' counsel pointed to the EO's call for agencies to work with third-party organizations, noting that certain third-party organizations have in the past engaged in activities that resulted in improper voter registrations. But Plaintiffs do not specifically allege the

---

[3] Plaintiffs' counsel also pointed to statements by Mississippi Secretary of State Watson and Texas Attorney General Paxton that supposedly corroborate Secretary Ashcroft's declaration. But no Plaintiff in this action is from Texas or Mississippi, and regardless, the statements do not clearly show that Plaintiffs are likely to be able to establish all the elements of standing. *See* Docs. [51-6]; [51-7] at 20-21.

6

involvement of any third-party organization in implementing the EO; nor do they allege any third-party action that threatens the actual or apparent integrity of the election. And again, Plaintiffs fail to allege a causal link between the EO and any submissions of duplicative or ineligible voter registration forms or mail-in ballot applications.

Because Plaintiffs have not made a "clear showing" that they are "likely" to establish injury-in-fact or causation, they have not established standing to seek a preliminary injunction in this matter.[4] *Murthy*, 144 S. Ct. at 1986.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction, Doc. [48], is **DENIED**.

Dated this 30th day of October, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[4] Because the failure to clearly show a likelihood of establishing injury-in-fact or causation is dispositive of Plaintiffs' Motion for a Preliminary Injunction, Doc. [48], the Court takes no position on the other issues disputed in the parties' briefing of that motion. The Court also takes no position at this time on any issue raised in the briefing of Defendants' Motion to Dismiss, Doc. [56].